# NATIONAL LABOR RELATIONS BOARD *v.* PITTS-BURGH STEAMSHIP CO.

No. 258. Argued April 19, 1949.—Decided June 20, 1949.

*Robert L. Stern* argued the cause for petitioner. With him on the brief were *Solicitor General Perlman, Robert N. Denham, David P. Findling* and *Ruth Weyand.*

*Nathan L. Miller* argued the cause for respondent. With him on the brief were *Lee C. Hinslea, Lucian Y. Ray* and *Roger M. Blough.*

MR. JUSTICE RUTLEDGE delivered the opinion of the Court.

In 1945 the National Labor Relations Board, petitioner here, issued its complaint charging respondent with the commission of certain unfair labor practices in the course of operating its fleet of Great Lakes bulk cargo vessels. As developed at a hearing before a trial examiner, the Board's charges were in substance that in 1944 respondent interfered with attempts by the National Maritime Union to organize respondent's seamen, with the purpose and the ultimately achieved effect of causing the union's repudiation at a Board-sponsored election.[1] Specifically, there was testimony tending to show that licensed personnel (officers) on certain of respondent's ships by word and deed had expressed to their unlicensed seamen bitter hostility to the union and its members; that respondent's president, one Ferbert, had written two letters to every seaman covertly suggesting in inaccurate fashion the possible disadvantages of NMU representation; and that one Shartle was discharged from respondent's employ for engaging in union organization. Some of the Board's testimony, tendered by union witnesses, was controverted by respondent's witnesses; and respondent also introduced testimony tending to show that it had strictly enjoined its licensed personnel to remain wholly neutral

---

[1] The question voted on was acceptance of the NMU as collective-bargaining agent: the NMU was rejected by a vote of 889 to 720.

in the weeks leading up to and including the Board election.

The trial examiner concluded that respondent had interfered with NMU organization, in violation of §§ 7 and 8 (1) of the Wagner Act, 29 U. S. C. §§ 157, 158 (1), and had fired an employee for union activity, in violation of § 8 (3), 29 U. S. C. § 158 (3). Respondent's exceptions to the trial examiner's findings were briefed and argued before the Board, in accordance with its usual procedure. On August 13, 1946, the Board adopted the trial examiner's findings without substantial change, and issued its order requiring respondent to cease and desist from its antiunion conduct and to reinstate the wrongfully discharged Shartle with full seniority and reimbursement for lost wages. 69 N. L. R. B. 1395.

Two months later respondent petitioned the Court of Appeals to review the Board's order; the Board filed a counterpetition for enforcement of the order. On April 5, 1948, the court announced its decision refusing enforcement. 167 F. 2d 126. The court did not determine whether the evidence, if credited, would support the findings. Instead it held the findings and the order based thereon invalidated by the latent, pervasive and unremedied bias of the trial examiner—a bias found apparent on the face of the record: "Without exception, whenever there was a conflict of evidence, the witnesses for the [Company] were held to be untrustworthy and those for the union reliable. . . . It is enough to say that the unvarying repudiation of every witness for the petitioner because of falsity, evasion or faint recollection, along with the consistent exaltation of every union witness as truthful, forthright and accurate, destroys completely any confidence that might otherwise be placed in the findings of the trial examiner and stamp[s] them as arbitrary. The Labor Board having adopted them in toto, its blanket pro forma findings are in no 'better

posture. . . . With due respect for the rule that the findings of the Board are binding upon us if based upon evidence, it becomes impossible to sustain an order upon the adoption of a trial examiner's report which, upon its face, so clearly bears the imprint of bias and prejudice that it lacks all semblance of fair judicial determination." 167 F. 2d at 128–129. To review the court's determination, we granted certiorari. 335 U. S. 857.

*First:* We are constrained to reject the court's conclusion that an objective finder of fact could not resolve all factual conflicts arising in a legal proceeding in favor of one litigant. The ordinary lawsuit, civil or criminal, normally depends for its resolution on which version of the facts in dispute is accepted by the trier of fact. Where the number of facts in dispute increases, the arithmetical chance of their uniform resolution diminishes—but it does not disappear. Yet it is not mere arithmetical chance which controls our present inquiry, for the facts disputed in litigation are not random unknowns in isolated equations—they are facets of related human behavior, and the chiseling of one facet helps to mark the borders of the next. Thus, in the determination of litigated facts, the testimony of one who has been found unreliable as to one issue may properly be accorded little weight as to the next. Accordingly, total rejection of an opposed view cannot of itself impugn the integrity or competence of a trier of fact. The gist of the matter has been put well by the Court of Appeals for the Fifth Circuit, speaking through Judge Hutcheson, in granting enforcement of an NLRB order:

"The fact alone . . . of which Respondent makes so much, that Examiner and Board uniformly credited the Board's witnesses and as uniformly discredited those of the Respondent, though the Board's witnesses were few and the Respondent's witnesses were many, would not furnish a basis for a finding

> by us that such a bias or partiality existed and therefore the hearings were unfair. Unless the credited evidence . . . carries its own death wound, that is, is incredible and therefore, cannot in law be credited, and the discredited evidence . . . carries its own irrefutable truth, that is, is of such nature that it cannot in law be discredited, we cannot determine that to credit the one and discredit the other is an evidence of bias."[2]

Suffice it to say in this case that our attention has been called to no credited testimony which "carries its own death wound," and to none discredited which "carries its own irrefutable truth." Indeed, careful scrutiny of the record belies the view that the trial examiner did in fact believe all union testimony[3] or that he even believed the union version of every disputed factual issue.[4] Rather, the printed transcript suggests thoughtful and discriminating evaluation of the facts.

---

[2] *Labor Board* v. *Robbins Tire & Rubber Co.*, 161 F. 2d 798, 800; see *Labor Board* v. *Auburn Foundry*, 119 F. 2d 331, 333.

[3] Thus, for example, the trial examiner had the following to say by way of footnote to his intermediate report: "No attempt will be made to describe all statements and activities claimed by counsel for the Board to constitute part of the respondent's course of anti-union conduct. Thus, no mention is made of those incidents which the undersigned regards as insubstantial in character or as unsupported by a fair preponderance of credible evidence." 69 N. L. R. B. at 1402, n. 6.

[4] Important issues of fact arose, for example, over whether respondent had been responsible for distributing to the unlicensed seamen (1) copies of a speech hostile to the NMU delivered by a Member of Congress, (2) copies of a union pamphlet entitled "NMU Fights Jim Crow," which the union wished to withhold from circulation for fear the unlicensed seamen would react unfavorably to a union advocating racial equality. As to these issues the trial examiner had the following to say: "The respondent admitted responsibility for the issuance of the Ferbert letters [see text, *supra*], but denied that it distributed copies of the speech and pamphlet, both of which,

*Second:* A question remains as to the proper disposition of this case. It is urged upon us by the Board that, there being substantial evidence in the record to support the Board's findings and order, we should remand the case with instructions to enforce the Board's order without further delay. Without doubting the existence here of evidence substantial enough under the Wagner Act, *Consolidated Edison Co.* v. *Labor Board,* 305 U. S. 197, 229, to warrant the Board's findings, we are not certain whether that standard controls this case. For questions have arisen whether the Administrative Procedure Act, 60 Stat. 237, 5 U. S. C. § 1001 *et seq.,* and the Taft-Hartley Act, 61 Stat. 136, 29 U. S. C. (1946 ed., Supp. I), § 141 *et seq.,* enacted between issuance of the Board's order and the Court of Appeals' decision, are applicable to and, if applicable, in any way affect Board procedures and the scope of judicial review of Board orders. The applicability and possible effect of either or both of these statutes apparently were not dealt with by the Court of Appeals, which neither discussed the statutes nor cited cases discussing them; the statutes and their

_____

the record establishes, came through the mails. There is no substantial evidence in the record showing that the respondent was responsible for the distribution of the speech. The Jim Crow pamphlet, which set forth the Union's opposition to racial discrimination in employment, was admittedly a publication of the Union. While there is evidence that the Union and its organizers did not issue or use that pamphlet as part of its campaign to organize the respondent's vessels, and some support for the assertion that the respondent was responsible for its distribution is to be found in the evidence . . . showing the manner in which the respondent's supervisory personnel used the pamphlet and its subject matter in playing upon the racial prejudices, antagonisms and fears of the employees, the record is likewise bare of substantial evidence tracing responsibility for its distribution to the respondent. Consequently, and in view of the respondent's disclaimer of responsibility, it is found that the respondent did not cause the distribution of the pamphlet or the speech." 69 N. L. R. B. at 1400.

impact have not been briefed with any elaboration before this Court. These questions should be considered in the first instance by the Court of Appeals. Accordingly, in order to afford such an opportunity, we remand the cause to the Court of Appeals for proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE JACKSON reserves opinion as to the sufficiency of the evidence under the Wagner Act in view of the Court's determination to return the case to the Court of Appeals.