**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**EAST TEXAS PULP & PAPER COMPANY, Respondent.**

**No. 21291.**

United States Court of Appeals Fifth Circuit.

June 8, 1965.

Allen M. Hutter, Atty., Marcel Mallet-Prevost, Asst. Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, N. L. R. B., Washington, D. C., Arnold Ordman, Gen. Counsel, Stephen B. Goldberg, Atty., N. L. R. B., for petitioner.

John B. Abercrombie, Houston, Tex., Baker, Botts, Shepherd & Coates, Houston, Tex., of counsel, for respondent.

Before WISDOM and GEWIN, Circuit Judges, and HANNAY, District Judge.

HANNAY, District Judge:

This is a petition for enforcement of an NLRB order against Respondent. The Board found that Respondent violated Section 8(a) (1) by threats of reprisal, actual reprisals, and promises of benefit —all designed to induce former employees to withdraw contractual grievances and unfair labor practice charges filed against the Respondent. There is testimony to the effect that four of the employees were told by the plant manager, O. Ray Brown, hereinafter referred to as Brown, that he would give them recommendations for employment elsewhere, since they had been laid off at his plant, only if they dropped their grievances, but would not do so otherwise. There is evidence that he had given such recommendations to two other employees after they had dropped their grievances and that he had actually withheld recommendations for two others as long as the grievances were pending. There is also testimony that the company president told an employee that he (the employee) should drop his grievance if he ever "wanted to work for East Texas or any other big company." The Board found that such conduct interfered with the processing of grievances and that since the right to file and process grievances under a collective bargaining contract is guaranteed by section 7 of the Act, the Respondent's conduct violated 8 (a) (1).

Respondent contends that it did not refuse to give these former employees recommendations because of the filing of grievances, but solely because such recommendations could be used against Respondent in an arbitration proceeding arising from such grievances. The Trial Examiner found, and the Board agreed, that Respondent used the threat of "no recommendation" to induce the employees

to drop their grievances. This finding is supported by substantial evidence.

■ The Board also found that Respondent induced two of its former employees to withdraw unfair labor practice charges filed against it by threatening to discharge any employees who might be reinstated as the result of the Board proceedings, and threatening to interfere in the organizational rights of its employees. There is testimony that Brown told one employee that if he would take his name off the charge filed with the Board he (the employee) would be given a better job after the dispute "blew over." There is also evidence that Brown stated that if any of the employees were reinstated as a result of the NLRB proceedings, the Company would go on firing them and that the employees so reinstated would be "dead ducks" as "big companies work together." Brown also told one employee that there would be no union in the company's plant other than the Pulp and Sulphite Union. The Board found the foregoing conduct induced two employees to remove their names from the unfair labor practice charges filed with the Board. This finding was based on substantial evidence.

The Respondent argues that they only discussed the merits of the charge with the employees and that they made no threats or promises incident thereto. The Board found to the contrary and there is substantial evidence to support the Board's findings.

■ The major part of Respondent's brief is devoted to an attack on the Trial Examiner's evidentiary rulings and credibility determinations. Respondent alleges that the Trial Examiner's rulings on evidence relevant to this proceeding and his findings as to the credibility of the witnesses were biased in favor of the employees and prejudicial to Respondent and denied Respondent a fair hearing and due process of law. The Respondent details a series of evidentiary rulings which it claims shows bias on the part of the Trial Examiner and points out that he determined to reject the testimony of Respondent's executives to the

extent that it is inconsistent with the testimony of the other witnesses. In his Intermediate Report the Trial Examiner defends this blanket discrediting of Respondent's witnesses on the grounds that their recollection of events was less accurate because they sat in on so many meetings with employees that they could not remember exactly what transpired at the particular meetings in question and on the basis of inconsistent testimony. As to the evidentiary rulings the Board argues that such rulings were proper and that the excluded evidence (which Respondent says should have been admitted) is either irrelevant to the issues raised by the Board's decision or inadmissible under rules of evidence. The Board contends that much of the evidence was designed to refute the General Counsel's original theory of an 8(a) (4) violation and that since both the Trial Examiner and the Board rejected that theory, the exclusion of such evidence was not prejudicial to Respondent. The credibility questions and evidentiary rulings alone are not sufficient to show the Trial Examiner was so biased as to deny a fair hearing to Respondent. In that connection see opinion of Judge Wisdom in N. L. R. B. v. Dixie Gas, Inc., 5 Cir., 323 F.2d 433, on page 435:

"The Board accepted the Examiner's credibility findings.

"The Supreme Court has recently reiterated the point that the Trial Examiner 'sees the witnesses and hears them testify, while the Board and the reviewing court look only at cold records'. N. L. R. B. v. Walton Manufacturing Co., 1962, 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829."

And on page 437 of 323 F.2d:

"Thus, in N. L. R. B. v. Pittsburgh S. S. Co., 1951, 337 U.S. 656, 69 S.Ct. 1283, 93 L.Ed. 1602, the Supreme Court upheld the Board against the contention that it showed bias to credit *all* of the general counsel's witnesses and to discredit *all* of the respondent's witnesses, but the Court excepted from the general rule of deference to credibility findings cred-

ited testimony which 'carries its own death wound' and discredited testimony which 'carries its own irrefutable truth'." . (Emphasis added)

In N. L. R. B. v. Pittsburgh S. S. Co., 337 U.S. 656, at page 659, 69 S.Ct. 1283, page 1285, it was held:

"Thus, in the determination of litigated facts, the testimony of one who has been found unreliable as to one issue may properly be accorded little weight as to the next. Accordingly, total rejection of an opposed view cannot of itself impugn the integrity or competence of a trier of fact. The gist of the matter has been put well by the Court of Appeals for the Fifth Circuit, speaking through Judge Hutcheson, in granting enforcement of an NLRB order:

'The fact alone * * * of which Respondent makes so much, that Examiner and Board uniformly credited the Board's witnesses and as uniformly discredited those of the Respondent, though the Board's witnesses were few and the Respondent's witnesses were many, would not furnish a basis for a finding by us that such a bias or partiality existed and therefore the hearings were unfair. Unless the credited evidence * * * carries its own death wound, that is, is incredible and therefore, cannot in law be credited, and the discredited evidence * * * carries its own irrefutable truth, that is, is of such nature that it cannot in law be discredited, we cannot determine that to credit the one and discredit the other is an evidence of bias.' "

Respondent also contends that the Board's order is too broad in scope, is beyond the authority of the Board, and is not warranted by the evidence. The Board's order requires the Company to consider on the merits, notwithstanding any time limitations contained in its collective bargaining contract, the grievances filed since the Board found they were withdrawn as a result of the Company's unlawful conduct. It also requires the Company to consider any application for re-employment which any of the charging parties may make, without regard to their previously having filed grievances or unfair labor practice charges. Finally, the Order requires Respondent to cease and desist from interfering with, restraining or coercing its employees in the exercise of the rights guaranteed by section 7 of the Act. Respondent argues that the complaint here arose out of an isolated situation and that it has not been engaging in extensive unfair labor practices and that therefore there is no basis for such a broad order. As to the order to consider the grievances Respondent says it effectively rewrites the collective bargaining agreement between the parties and imposes an unwarranted burden on the union. Respondent claims the order to consider applications for employment without regard to who filed grievances violates section 10(c) since the employees were discharged *for cause*. The Board contends the order merely prevents discrimination because of having filed grievances and does not require reinstatement.

Respondent in support of its claim restraining it from future violations cites N. L. R. B. v. Express Publishing Co., 312 U.S. 426, which on page 437, 61 S.Ct. 693, page 700, 85 L.Ed. 930, says:

" * * * To justify an order restraining other violations it must appear that they bear some resemblance to that which the employer has committed or that danger of their commission in the future is to be anticipated from the course of his conduct in the past."

However, in the same opinion, on page 435, 61 S.Ct. page 699, the Court wrote:

"A federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission *in the future* unless enjoined, may fairly be anticipated from the defendant's conduct in the past." (Emphasis added)

■ Here the Respondent reveals a definite and positive purpose of violating the Act generally, and provisions of an order broadly aimed at *future* violations are "within the Board's authority under appropriate circumstances." See N. L. R. B. v. Ochoa Fertilizer Corp., 368 U.S. 318, 322, 82 S.Ct. 344, 7 L.Ed.2d 312.

■ This is particularly applicable in view of the extensive unfair labor practices engaged in by Respondent—(1) interference with employees' rights to file grievances; (2) similar interference with the right to file unfair labor practice charges; (3) Brown's statement that there *would be* no union in company's plant other than the incumbent Pulp & Sulphite Workers, which was a plain threat to interfere *in the future* with the employees' right to change bargaining representatives; and (4) Brown's threat to *continue* discharging employees ordered reinstated by the Board.

On the record as a whole, substantial evidence supports the Board's finding. The petition for enforcement of the Board's order is

Granted.