W. F. CHANEY, Appellant,

v.

CITY OF GALVESTON et al., Appellees.

EARL J. SMITH & CO., Inc., Appellant,

v.

CITY OF GALVESTON et al., Appellees.

No. 23222.

United States Court of Appeals
Fifth Circuit.

Nov. 21, 1966.

Sidney Ravkind, Houston, Tex., Mandell & Wright, Houston, Tex., for W. F. Chaney.

Edward W. Watson, Galveston, Tex., J. P. Forney, Jr., Houston, Tex., Eastham, Watson, Dale & Forney, Galveston, Tex., of counsel, for Earl J. Smith & Co.

Bryan F. Williams, Jr., V. W. McLeod, Royston, Rayzor & Cook, Galveston, Tex., for Southern Stevedoring & Contracting Co., Inc.

McLeod, Alexander, Powel & Apffel, Galveston, Tex., for appellee, City of Galveston.

Before WISDOM, BELL and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge.

Appellant, W. F. Chaney, is an injured longshoreman who filed this libel in admiralty against the City of Galveston and Earl J. Smith & Company, Inc., owner and operator of the SS SMITH DEFENDER. A cross libel was filed by Smith against the City and an impleading petition was filed by Smith against Southern Stevedoring & Contracting Company, Inc. From an adverse judgment of the district court dismissing his suit, libelant has appealed.

Detailed findings of fact were made by the trial judge who held that libelant's injuries were solely and proximately caused by his own negligence. The district court found that on March 20, 1963, libelant Chaney, a longshoreman, was a walking foreman employed by Southern Stevedoring aboard the SMITH DEFENDER, owned and operated by Smith. Southern Stevedoring was performing stevedoring services for Smith in the loading of the vessel with bulk grain at the grain elevator owned and operated by the City of Galveston. The vessel was being shifted at the time into a berth at a pier alongside the grain elevator and a grain spout of the elevator was being spotted by libelant on board the vessel over Hatch No. 2.

Chaney's claim was based on unseaworthiness of the vessel and the negligence of its owner, and against the City because of the breaking of an alleged defective telescoping cable on the grain spout which was being used in the loading of grain. Smith also impleaded Southern asking indemnity under the stevedore's warranty, should Smith be found liable; and Smith's cross libel sought indemnity from the City for breach of warranty and negligence, should Smith be found liable.

Though libelant testified that he fell from a stack of pontoons to the deck of the vessel, a distance of 3 to 4 feet, landing on his buttocks while he was pulling on one of two tag lines attached to the end of the grain spout in an effort to spot the spout over Hatch No. 2 and keep it clear of the ship's rigging, the court found the evidence to the contrary. The telescoping portion of the grain spout extended as the telescoping cable broke and libelant claimed that the resulting sudden slack in the tag line caused him to fall. After the case was concluded libelant filed new proposed findings of fact, etc., which proposed a finding simply that libelant was caused to lose his balance and fall backward without reference to falling from pontoons to the deck.

The grain spout was constructed of heavy steel pipe about 30 inches in diameter and the telescoping portion of about 35 feet in length weighed 1,800 pounds. A steel cable was used to extend or restrict the telescoping spout. The breaking strength of the cable was tested after the accident and found to be 6,950 pounds which the court found was of sufficient strength safely to perform its purpose and function in normal use. The court said that the cable would not have broken but for the inordinate strain placed upon it by the pull of the ship after libelant had caused the spout to be secured to the ship. The trial judge found that the cable had been recently replaced and inspected and was not defective. The court also found that libelant and Southern Stevedoring had long observed and were fully aware of the safe practice at this wharf that when spouts were being moved into position over a ship two wharf employees of the City would be present to handle the tag lines and assist in positioning the spout over the vessel; that on this occasion the City had not been notified by either the stevedore or libelant that the ship was being berthed and that spouts were be-

ing spotted. Libelant physically took over the spouts and attached tag lines and began spotting the spout without guidance or assistance. While doing so the court found that Chaney caused the second of the two tag lines to become secured to the ship's winch or other part of the ship and as the ship moved it pulled the cable apart. The court's conclusion was that the vessel was not unseaworthy; that there was no negligence on the part of any respondent; and that the sole proximate cause of the injury, if any, to libelant was his own heedlessness in not observing the safe practice of having spout tenders assist him and in attempting to spot the spout with only one tag line and permitting the second tag line to become secured to the ship.

Appellant contends that the findings of the district court are clearly erroneous and should be set aside. Rule 52(a), Federal Rules of Civil Procedure, provides in part that "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

■■■■ The situation here is not unlike that in our decision in Smith v. United States, 5 Cir., 1961, 287 F.2d 299, where Judge Brown wrote: "The attack on the Court's findings of fact is the not unnatural one that the Trial Judge ought not to have found as he did. But this misconceives our function. We do not retry the case. Williams v. National Surety Corp., 5 Cir., 1958, 257 F.2d 771, 773. We may determine only whether the findings pass muster under the clearly erroneous concept of F.R.Civ.P. 52(a),

28 U.S.C.A. The burden of upsetting these findings is indeed formidable here since the witnesses were all heard and seen by the Judge in open court and the crucial issues of motive and purpose involved credibility choices of the most elemental nature." A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed.[1] Where the evidence would support a conclusion either way, a choice by the trial judge between two permissible views of the weight of evidence is not clearly erroneous, and the fact that the judge totally rejected an opposed view impeaches neither his impartiality nor the propriety of his conclusions.[2] Such total rejection cannot of itself impugn the integrity or confidence of the trier of fact.[3] It is well settled that in order for a reviewing court to set aside findings of fact by a trial court sitting without a jury, it must be clearly demonstrated that such findings are without adequate evidentiary support in the record, or were induced by an erroneous view of the law, and the burden of showing that the findings are clearly erroneous is on the one attacking them.[4] The findings of a district court are not, therefore, lightly to be set aside,[5] for the Court of Appeals is not a trier of facts, and does not substitute its own judgment for that of the trial court.[6] An extended review of the evidence is not justified, therefore, under the circumstances. Nevertheless, we have carefully considered the errors complained of by appellant, as follows:

1. The court found that Chaney could not have fallen from stacked pontoons.

1. McAllister v. United States, 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954); United States v. Oregon State Medical Soc., 343 U.S. 326, 72 S.Ct. 690, 96 L.Ed. 978 (1952); United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); Smith v. M/V Gisna, 5 Cir., 1966, 362 F.2d 164.

2. United States v. Yellow Cab Co., 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150 (1949).

3. National Labor Relations Board v. Pittsburgh S. S. Co., 337 U.S. 656, 69 S.Ct. 1283, 93 L.Ed. 1602 (1949).

4. Cedillo v. Standard Oil Company of Texas, 5 Cir., 1961, 291 F.2d 246.

5. Niagara Fire Insurance Company v. Everett, 5 Cir., 1961, 292 F.2d 100.

6. Welsh Co. of California v. Strolee of California, Inc., 9 Cir., 1961, 290 F.2d 509.

This is a disputed question of fact and libelant testified that is how he was hurt. However, one of his principal witnesses said that his best recollection was that Chaney was standing on the deck itself when the accident occurred. Appellant complains more of the court's emphasis on this point than of error. This is only a detail of the accident and the court had a right to resolve the conflict either way.

2. The district judge also found that the cable was of sufficient breaking strength safely to perform its purpose in the normal use of the grain spout and to this finding libelant takes particular exception. There is evidence both ways on this point: from libelant, to the effect that the cable was defective, from the witness representing the testing laboratory, and from others who examined the cable immediately after the accident and found it rusted and corroded. Other witnesses examined the cable at the same time and testified that it was not rusty or frayed. The court was obliged to decide another conflict and also to determine credibility of witnesses. It had a choice of two versions.

3. The court also found that the cable was caused to break by an inordinate strain placed on it by the pull of the ship after Chaney had caused the spout to be secured to the ship. One of the City's employees testified that the tag line became attached to something on the ship because he could see the strain on it and the force of the moving ship broke the cable. He said that manpower could not have strained it. There were other eyewitnesses who stated that the tag line was not attached to the vessel and that the movement of the ship did not break it. The court had to settle this conflict in the evidence, which it did, against Chaney.

4. The court found that the cable had been replaced in September 1962 and inspected in February 1963 and was not defective. But an ex-City employee testified from his recollection and records that the cable was so replaced and the City wharf supervisor said he inspected the cable in February. There was no evidence to the contrary.

5. Libelant also complains of the finding that there was no negligence on the part of any respondent. We will discuss this general finding later.

6. Libelant disputes the finding that he and Southern had long observed and were aware of a practice at the Galveston Wharf which required two wharf employees to be present when a spout was taken aboard a ship. The testimony indicates that the City was not even aware that the ship was being berthed at the wharf at the time and, therefore, had none of its employees present to assist in spotting the spouts. The City contends that its employees were supposed to be present to assist in this operation and that this was well known to all of the parties. While there appears to be no conflict about the City not being aware of the berthing of the vessel which occurred at the time of the accident, there is a dispute as to whether the practice and custom was that the City's employees be present when the spouts are spotted. With much conflicting testimony the court decided that this was the practice and that it had been violated by the parties, particularly by libelant. The court had already decided that the City's cable which broke was not defective. There is no evidence of any negligence on the part of the ship's crew and no indication that any of them were present when Chaney was injured. The vessel was being moved through the use of winches and not under its own power or by a tug.

■■ If the telescoping spout of the grain elevator being used to load the vessel was in fact defective, the vessel would owe a warranty of seaworthiness to Chaney, the longshoreman, in respect to this loading device. Deffes v. Federal Barge Lines, Inc., 5 Cir., 1966, 361 F.2d 422. But the conflicting evidence in this regard was resolved by the district judge's holding that there was no defect. Issues of fact alone are involved in the errors complained of by libelant, but after careful scrutiny we cannot say that

we have a definite and firm conviction that a mistake was committed or that the findings of the court were clearly erroneous. Nor would the evidence support a finding under the maritime law that the shipowner is responsible under the circumstances because it failed, as libelant charges, to correct unsafe work practices. There is no evidence that the ship's personnel were in any way involved in this accident or had any knowledge of it. The accident occurred while the vessel was being moved into a berth at the pier from another wharf and while the grain spout was being spotted in place. Accordingly, we would not be warranted in disturbing the district judge's finding that there was no negligence on the part of any respondent.[7]

Affirmed.

---

7. Smith had claimed that if the dismissal of the libel be affirmed it would be entitled to a modification of the decree providing for its recovery from Southern of attorney's fees and expense in defending the libel. However, the court has been informed that Smith and Southern have come to a compromise agreement on this subsidiary phase of the case and in the event the dismissal of Chaney's libel against Smith and the City is affirmed it will not be necessary to consider and dispose of this issue which will be moot.