**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**The GATES RUBBER COMPANY, Respondent.**

**No. 73–1098.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 16, 1973.

Decided March 5, 1974.

Joseph Oertel, N. L. R. B., for petitioner; Peter G. Nash, Gen. Counsel, John S. Irving, Deputy Gen. Counsel, Patrick Hardin, Associate Gen. Counsel, Elliott Moore, Asst. Gen. Counsel, Allison W. Brown, Jr., Attys., N.L.R.B., Washington, D. C., on brief.

Richard L. Barnes, Tulsa, Okl., for respondent; Charles A. Kothe, Mary T. Matthies, Kothe & Eagleton, Inc., Tulsa, Okl., on brief.

Before PHILLIPS, Chief Judge, WEICK, Circuit Judge, and O'SULLIVAN, Senior Circuit Judge.

PER CURIAM.

The National Labor Relations Board asks enforcement of its order finding respondent Gates Rubber Company (Gates) guilty of violating Sections 8(a)(1), (3) and (5) of the National Labor Relations Act, as amended, §§ 158(a)(1), (3) and (5). The Board's decision and order are reported at 199 NLRB No. 108.

We grant enforcement.

The violations charged arose from Gates' discharge of Donald Copass, President of Local 670, United Rubber, Cork, Linoleum and Plastic Workers of America, AFL–CIO, which represents Gates' employees at its Nashville, Tennessee, plant, and from Gates' refusal to deal with Copass as Chairman of the Union's Grievance Committee, and on other matters. Without extended review of the evidence, we believe that the record discloses that Copass was an ag-

gressive, truculent and sometimes insolent labor leader. The Board's address to us observes:

"Initially, it is clear from the record that Copass had for some time been a thorn in the Company's side and that it resented his role as an outspoken advocate for the employees and spokesman for the Union."

Copass had been president of the Union since 1967, and had held other offices in the Union. There was evidence that Gates had long desired an end to Copass' leadership in the Union. Fulfillment of this desire was attempted by Gates in October, 1971, when it terminated Copass, primarily for his alleged interference with Gates' participation in the United Givers Fund campaign, then in progress at Nashville.

Gates had planned to show to its management a movie having to do with the United Givers Fund Campaign. The movie was to be brought to the plant by a UGF staff member, Edwin Bryan, a former union man acting as agent to bring labor and management together in serving the purposes of UGF. Bryan called Copass to tell him of the meeting, presumably to maintain good relations with the Union whose cooperation would aid in the campaign. He met with Copass at the plant before the scheduled meeting. Copass had expressed a view that his union had not been sufficiently recognized for what it had done in previous drives, and he thought that the union—probably through him—should be permitted greater participation in the events of the campaign. As a consequence of an early morning meeting between Bryan and Copass, Bryan felt it best to temporarily call off the exhibition to Gates' management people. Copass was forthwith suspended, and after investigation, including consultation with top management at Gates' home office in Denver, Colorado, he was terminated.

Gates subsequently refused to deal with Copass as chairman of the union grievance committee or to allow him access to the plant. This action was bottomed upon Gates' position that Copass was no longer its employee, and was therefore not qualified to serve on the grievance committee. In addition, it also feared that his presence inside the plant would be disruptive. In support of the discharge of Copass, Gates assigned various acts of wrongdoing by Copass which had occurred over several years, but which Gates had overlooked in serving its "peace at any price" effort to avoid trouble. Copass denied most of the events cited to support Gates' charges.

Were we at liberty to resolve and dispose of the factual issues presented in this case, we might conclude that Gates was justified in its treatment of Copass. As is customary, the Administrative Law Judge—then the Trial Examiner—resolved critical factual disputes by "crediting" the discharged Copass. However one-sided such resolutions may have been, this attitude does not permit us to take over the function of the examiner or the Board, which affirmed the Administrative Law Judge's findings. N.L.R.B. v. Pittsburgh Steamship Co., 337 U.S. 656, 69 S.Ct. 1283, 93 L.Ed. 1602 (1949).

Notwithstanding the broadened powers of review given to us by the decision in Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), we cannot in this case say that the Board's order and commands are without support of substantial evidence. We are therefore foreclosed from interference.

It may be that supported by his present victory over management, Copass' truculence and aggressiveness will be exacerbated. We indulge the hope that the Board and its agents will not frustrate reasonable efforts of the employer to keep his conduct within bounds.

Enforcement granted.