866 F.2d 1424
 275 U.S.App.D.C. 306, 1989 O.S.H.D. (CCH) P 28,415
 CHANEY CREEK COAL CORPORATION and Dollar Branch Coal
Corporation, Petitioners,
v.
FEDERAL MINE SAFETY & HEALTH REVIEW COMMISSION, Odell
Maggard, and the Secretary of Labor, Mine Safety &
Health Administration on Behalf of Odell
Maggard, Respondents.
 Nos. 87-1494, 87-1500.
 United States Court of Appeals,
District of Columbia Circuit.
Argued Nov. 23, 1988.
Decided Jan. 27, 1989.
 
 Petitions for Review of an Order of the Federal Mine Safety and Health Review Commission.
 Thomas W. Miller, with whom Thomas C. Marks, Lexington, Ky., was on the brief, for petitioners Chaney Creek Coal Corp. and Dollar Branch Coal Corp.
 Tony Oppegard, Hazard, Ky., for respondent Odell Maggard.
 Colleen Geraghty, Attorney, Dept. of Labor, with whom George R. Salem, Sol., and Dennis D. Clark, Counsel, Appellate Litigation, Dept. of Labor, Washington, D.C., were on the brief, for respondent Secretary of Labor.
 Ann Rosenthal and Linda Leasure, Attorneys, Dept. of Labor, Arlington, Va., also entered appearances for respondent Secretary of Labor.
 L. Joseph Ferrara entered an appearance for respondent Federal Mine Safety and Health Review Commission.
 Before EDWARDS and WILLIAMS, Circuit Judges, and REVERCOMB*, District Judge.
 Opinion for the Court filed by Circuit Judge HARRY T. EDWARDS.
 HARRY T. EDWARDS, Circuit Judge:
 
 
 1
 This case involves cross-petitions for review of a decision of the Federal Mine Safety and Health Review Commission ("FMSHRC" or "Commission"). The Commission found that a miner, Odell Maggard, was fired by Chaney Creek Coal Corporation[1] because of his refusal to perform work that he believed to be hazardous, and that this action by the employer violated section 105(c)(1) of the Federal Mine Safety and Health Act of 1977 ("Act" or "Mine Act"), 30 U.S.C. Sec. 815(c)(1) (1982). In reaching this conclusion, the Commission upheld an Administrative Law Judge's ("ALJ") determination that Maggard was the subject of a discriminatory discharge in violation of the Act, and awarded him backpay and interest. However, the Commission vacated the ALJ's proposed award of attorney's fees in favor of Maggard. On this latter point, FMSHRC held that Maggard had no right to initiate an action in his own behalf under section 105(c)(3) of the Act prior to determination by the Secretary of Labor ("Secretary") as to whether a violation of section 105(c) had occurred. Because Maggard filed his complaint before the Secretary had made this determination, and because the Secretary subsequently filed a complaint on behalf of Maggard, the Commission dismissed Maggard's individual complaint and rejected the claim for fees.
 
 
 2
 Chaney Creek petitions this court to reverse the Commission's finding of a violation of the Act, and to set aside the award of backpay and interest. Maggard petitions to reverse the Commission's judgment denying attorney's fees, and to collect additional interest that he claims is due on the award of backpay.
 
 
 3
 On the merits of the case, we find that there is substantial evidence in the record to support the judgments of the ALJ and FMSHRC that Maggard was unlawfully discharged because of his refusal to perform work he reasonably believed to be unsafe; accordingly, we deny the petition of Chaney Creek. On the question of attorney's fees, we grant the petition for review because we find that FMSHRC acted without authority when it dismissed Maggard's individual complaint. The ALJ found that, under then-extant Commission rules, Maggard properly filed an individual action under section 105(c)(3) when the Secretary failed to act on his complaint within 90 days. Neither the Secretary nor Chaney Creek challenged this ruling when the case was heard by the Commission. Consequently, the Commission had no basis upon which to rest a decision to dismiss Maggard's individual complaint or his claim for attorney's fees. We therefore reverse the Commission's decision on this point and remand the case to FMSHRC for a determination of the amount due to Maggard for attorney's fees. On remand, the Commission must also resolve the parties' dispute on interest.
 
 I. BACKGROUND
 
 4
 In early June 1985, Odell Maggard filed a complaint with an office of the Mine Safety and Health Administration ("MSHA") of the Department of Labor, charging discrimination under section 105(c)(2) of the Mine Act, 30 U.S.C. Sec. 815(c)(2) (1982).[2] Maggard alleged that he had been discharged by Chaney Creek in violation of section 105(c)(1) of the Act, 30 U.S.C. Sec. 815(c)(1) (1982), because of his refusal to perform work he believed to be hazardous.[3]
 
 
 5
 As a shuttle car operator in the Dollar Branch No. 3 Mine, Maggard drove a vehicle transporting coal from the "continuous miner"[4] to the conveyor belt which transports coal out of the mine. He had performed this job for about four months when, on January 10, 1985, section foreman Howard Muncy assigned him to the job of continuous miner's helper, a job on which Maggard had previously "filled in" at times. A miner's helper is responsible for watching the mine roof and for pulling the continuous miner's trailing cable clear when a miner backs away from the mine face, in order to prevent the miner from backing over and damaging the cable. The helper must move quickly when pulling the cable, and does not always have time to watch where he grabs. According to Maggard, he was shocked twice on January 10 while handling the trailing cable; the second shock was so severe that it knocked him "flat on [his] face." Joint Appendix ("J.A.") 112. Maggard testified that on both occasions he told Muncy that he had been shocked and asked that Muncy fix the cable, but Muncy refused. Maggard testified further that he asked Muncy for alternative work, but Muncy told him to "pull cable or else." J.A. 114. As a result, Maggard left the mine.
 
 
 6
 On June 11, 1985, Maggard filed a complaint of discrimination with the MSHA, alleging that he was discharged in violation of section 105(c)(1) of the Act because of his refusal to continue to pull the electrical cable after it shocked him twice. Specifically, he alleged that Muncy's refusal to fix the cable or assign him other work amounted to discharging him because of his exercise of his Mine Act rights. J.A. 2-3.
 
 
 7
 Under Section 105(c)(3) of the Mine Act, 30 U.S.C. Sec. 815(c)(3) (1982),[5] the Secretary of Labor is required to respond to a complaint filed under section 105(c)(2) within 90 days after it is received. However, in September 1985, the Secretary advised Maggard by letter that no determination had yet been made regarding the merits of his discrimination claim. The Secretary further informed Maggard that, pursuant to the Act and Commission Procedural Rule 40(b), Maggard had the right to file a complaint with the Commission on his own behalf; the Secretary advised, however, that the MSHA investigation would continue notwithstanding any action Maggard took. Maggard was also advised that, in the event that the MSHA determined that a violation of section 105(c) had occurred, the Secretary would file a complaint on Maggard's behalf.
 
 
 8
 On October 1, 1985, pursuant to the advice given by the Secretary, Maggard, through private counsel, filed a discrimination complaint asserting jurisdiction under section 105(c)(3) of the Act and Commission Rule 40(b), 29 C.F.R. Sec. 2700.40(b).[6] On December 14, 1985, the Secretary informed Maggard that the Secretary had determined that a violation of section 105(c) had occurred, and on December 26 the Secretary filed a separate complaint on Maggard's behalf pursuant to section 105(c)(2) of the Act. The Secretary thereafter moved for the ALJ to dismiss the complaint that Maggard had filed in his own behalf. The judge reserved decision on the Secretary's dismissal motion and consolidated the two complaints for hearing.
 
 
 9
 After an evidentiary hearing, the ALJ found that the cable Maggard was required to handle was spliced in several places, and that some tape covering the splices had been torn off, exposing interior copper wires. Maggard v. Chaney Creek Coal Corp., 8 F.M.S.H.R.C. 806, 810-11 (1986). Given the dampness prevalent in mines (which are wet down to combat dust), poor splicing creates a hazard of electrical shock for persons handling the cable. The ALJ found that Maggard "had indeed suffered serious electrical shock while handling the trailing cable," id. at 816, and that the conditions were "clearly hazardous." Id. at 818. The judge found further that, at the time of the incident, Maggard had a good faith, reasonable belief that continuing to handle the cable would be hazardous, and that Maggard had communicated his concern to management and had been denied alternative work, id. at 815-16. Consequently, the judge held that Maggard was the subject of a discriminatory discharge, concluding that Maggard engaged in a protected work refusal when he left the mine rather than handle the cable. Id. at 818. In a supplemental decision, the ALJ awarded Maggard backpay and interest through June 1, 1986, totalling $33,660.19, and awarded attorney's fees and expenses of $16,456.22 to the Appalachian Research and Defense Fund of Kentucky, Maggard's private attorney. Maggard v. Chaney Creek Coal Corp., 8 F.M.S.H.R.C. 966, 969-70 (1986).
 
 
 10
 The Commission, on August 25, unanimously affirmed the backpay award, finding that substantial evidence supported the judge's findings that Maggard had a reasonable, good faith belief that a hazard existed when he refused to continue pulling the cable. Maggard v. Chaney Creek Coal Co., 9 F.M.S.H.R.C 1314, 1323 (1987). The Commission, however, overturned the ALJ's denial of the Secretary's motion to dismiss Maggard's section 105(c)(3) private action, and then reversed the ALJ's proposed award of attorney's fees. The ALJ had found that, under Rule 40(b), Maggard had "the right to file a complaint on his own upon the failure of the Secretary to act within the [statutorily] prescribed 90-day period." 8 F.M.S.H.R.C. at 809. Thus, the ALJ found that he had "jurisdiction to entertain Mr. Maggard's case (under section 105(c)(3) and Commission Rule 40(b)) as well as the Secretary's case brought on behalf of Mr. Maggard under section 105(c)(2) of the Act." Id.
 
 
 11
 By a 3-2 vote, the Commission reversed this finding with the following explanation:
 
 
 12
 In another decision issued today, we have concluded that section 105(c)(3) of the Mine Act does not grant complainants the right to initiate an action on their own behalf prior to the Secretary's determination as to whether a violation of section 105(c) has occurred. Concomitantly we have invalidated the part of Commission Procedural Rule 40(b) that provides for such a procedure. [Gilbert v. Sandy Fork Mining Co., 9 F.M.S.H.R.C. 1327, 1337-40 (1987) ]. Because Maggard filed his complaint alleging jurisdiction under section 105(c)(3) prior to the Secretary's determination as to whether a violation occurred, Maggard's individual complaint under section 105(c)(3) must be dismissed.
 
 
 13
 9 F.M.S.H.R.C. at 1322.
 
 
 14
 As a consequence of the dismissal of the section 105(c)(3) suit, the Commission also reversed the ALJ's award of attorney's fees in favor of Maggard, citing Eastern Associated Coal Corp. v. FMSHRC, 813 F.2d 639 (4th Cir.1987), which held that attorney's fees are not available to private counsel in actions brought by the Secretary under section 105(c)(2).
 
 
 15
 On September 16, 1987, Maggard petitioned this court to review the portion of the Commission decision that dismissed his individual complaint and reversed his award of attorney's fees. On September 23, 1987, Chaney Creek petitioned for review of the order of backpay and interest.
 
 II. ANALYSIS
 
 16
 A. The Commission's Dismissal of Maggard's Individual Action
 
 
 17
 On the record before us, it is clear that neither Chaney Creek nor the Secretary ever challenged the ALJ's denial of the Secretary's motion to dismiss Maggard's private action. Chaney Creek's petition to the Commission set forth five distinct reasons for review; none challenged the ALJ's decision not to dismiss Maggard's individual complaint, see J.A. 313-14, and the Secretary of Labor did not file a petition for discretionary review challenging the ALJ's denial of its motion to dismiss. The FMSHRC, in its order granting Chaney Creek's petition for discretionary review, did not raise any additional issues for review, see J.A. 329-30. In short, the matter of the ALJ's denial of the Secretary's motion to dismiss Maggard's individual action simply was never presented to the Commission for review. This is further confirmed by the fact that the briefs subsequently filed by the parties before the Commission did not address the issue. See J.A. 306-28, 333-51, 352-58.
 
 
 18
 The Commission was without legal justification in raising this issue sua sponte.[7] The Secretary had failed to make a determination within 90 days after Maggard had complained to the Secretary; consequently, under Rule 40(b) as then written, Maggard was authorized to file and pursue a private suit. The ALJ's decision not to dismiss Maggard's complaint after the Secretary filed a separate action was completely correct under the operative Commission rules at the time of the decision. We therefore reverse the Commission's dismissal of Maggard's individual complaint and reinstate the ALJ's determinations on the merits of Maggard's private action.[8]
 
 B. Attorney's Fees
 
 19
 The FMSHRC's 3-2 decision to vacate the ALJ's award of attorney's fees in favor of Maggard was based on its dismissal of his individual section 105(c)(3) action. Section 105(c)(3) specifically grants plaintiffs the right to recover attorney's fees and costs. However, the Commission noted, if a plaintiff does not proceed under this section of the Act, he loses the statutory right provided in the section. The Commission relied on Eastern Associated Coal Corp. v. FMSHRC, 813 F.2d 639 (4th Cir.1987), in support of this finding.
 
 
 20
 In Eastern Associated Coal Corp., the Fourth Circuit held that a miner who retains private counsel to intervene in a section 105(c)(2) discrimination proceeding brought by the Secretary is not entitled to recover his private attorney's fees. This decision reversed that part of the Commission's decision in Secretary ex rel. Ribel v. Eastern Associated Coal Corp., 7 F.M.S.H.R.C. 2015 (1985), which held that attorney's fees could be awarded a miner who retains private counsel to intervene in a Secretary-initiated discrimination proceeding, provided that the private attorney's efforts are nonduplicative of the Secretary's efforts and contribute substantially to the success of the litigation.
 
 
 21
 Because we have determined that the Commission erred in dismissing Maggard's individual complaint, we find its reliance on Eastern Associated Coal Corp. to be inapposite. Eastern Associated Coal Corp. involved a miner suit under section 105(c)(2); Maggard, by contrast, did not intervene in the Secretary's action. Rather, Maggard prosecuted his own action before the Commission under section 105(c)(3), independent of that brought by the Secretary. See 8 F.M.S.H.R.C. at 967. In the absence of a challenge, Maggard was properly an individual complaining party before the Commission; thus, he was entitled to seek attorney's fees once he prevailed on the merits.
 
 
 22
 There remains a question, however, noted by Commissioners Doyle and Nelson in dissent, 9 F.M.S.H.R.C. at 1325, as to whether the fees awarded to Maggard by the ALJ were reasonable, in light of the employer's claim that some of the private counsel's work unnecessarily duplicated work that was being done by counsel for the Secretary. The Commission did not consider this question because it dismissed Maggard's individual complaint. We thus remand to the Commission for its consideration of any issues that may exist regarding the amount of the attorney's fees that are reasonably due to Maggard.
 
 C. The Operators' Claims on the Merits
 1. The ALJ's Findings of Fact
 
 23
 Chaney Creek asserts that the ALJ's factual findings underlying his conclusion of illegal discrimination are not supported by substantial evidence. They argue that Maggard did not reasonably and in good faith believe that handling the cable was hazardous, and that Maggard was not fired, but rather quit voluntarily because he was assigned a job that he found onerous. They further claim that the reason Maggard left the mine was not because he was shocked by the cable, but because he wanted to remain in his job as a shuttle car operator rather than be transferred to work as a continuous miner's helper. If Maggard were, in fact, found to have quit rather than to have been discharged, there would be no violation of the Act under section 105(c)(1), because there would have been no adverse action taken against Maggard by the employer.
 
 
 24
 In reviewing the Commission's findings of fact, the Mine Act imposes upon a reviewing court the same standard that governs FMSHRC review of ALJ findings of fact: we must uphold Commission findings "if supported by substantial evidence on the record considered as a whole," 30 U.S.C. Sec. 816(a)(1) (1982); see also 30 U.S.C. Sec. 823(d)(2)(A)(ii)(I) (1982) (setting the "substantial evidence" standard for Commission review of ALJ decisions); Donovan ex rel. Anderson v. Stafford Construction Co., 732 F.2d 954, 958 (D.C.Cir.1984). The Commission here embraced all of the ALJ's factual findings, reversing only on legal grounds. Our only task in reviewing substantial evidence questions is to determine whether there is "such relevant evidence as a reasonable mind might accept as adequate to support [the judge's] conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). Applying this standard, we affirm the FMSHRC's conclusion that the challenged findings of fact are supported by substantial evidence.
 
 
 25
 We agree with the Commission's ruling that the record reveals more than ample testimony to affirm the ALJ's findings. Although there was conflicting testimony on some issues, including the fact of Maggard's shock and the condition of the trailing cable, Maggard presented sufficient testimony (in addition to his own) that the cable was poorly maintained, see 8 F.M.S.H.R.C. at 810-11, and that he suffered severe shock, see id. at 811, to persuade the ALJ that "[Maggard] and his supporting witnesses [were] more credible" than the opposing witnesses. Id. at 815. We cannot find fault with the ALJ's substantiation of his findings; indeed, it is precisely these types of credibility determinations that an ALJ is uniquely well-positioned to make. As described by the Commission:
 
 
 26
 [A] "judge's credibility findings and resolution of disputed testimony should not be overturned lightly".... We have reviewed carefully the operators' allegations regarding the condition of the trailing cable and the alleged shock suffered by Maggard. We conclude that the operators have not provided evidence so compelling to justify the extraordinary step of overturning the findings of a trier of fact resting on credibility determinations. Thus, we conclude that substantial evidence supports the judge's finding that Maggard had a good faith, reasonable belief that handling the cable was hazardous.
 
 
 27
 9 F.M.S.H.R.C. at 1319 (citations omitted).
 
 
 28
 There is clearly substantial evidence in the record to support a finding of a violation with regard to the discharge of Maggard. Accordingly, we affirm the Commission's conclusion that the operators' termination of Maggard's employment violated section 105(c)(1) of the Act.
 
 
 29
 2. W.F. Taylor's Testimony and the ALJ's Impartiality
 
 
 30
 On the final day of the hearing, private counsel for Maggard called W.F. Taylor, one of the Department of Labor attorneys, as a rebuttal witness for the purpose of impeaching another witness' testimony. Chaney Creek asserts that they were denied due process on a number of grounds concerning Taylor's testimony. All of their challenges were rejected by the Commission. See 9 F.M.S.H.R.C at 1320. We affirm. The testimony was material, relevant and not unduly prejudicial.
 
 
 31
 Most importantly, we categorically reject Chaney Creek's assertions that either statements made by the ALJ or his written decision establishes that the judge was biased against them. The Supreme Court has identified "various situations ... in which ... the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable [such as] cases ... in which the adjudicator has a pecuniary interest in the outcome [or] ... he has been the target of personal abuse or criticism from the party before him." Withrow v. Larkin, 421 U.S. 35, 47, 95 S.Ct. 1456, 1464, 43 L.Ed.2d 712 (1975) (footnotes omitted). Neither of these factors are present here. Furthermore, the ALJ did not engage in any other activity that would show prejudice, such as assuming a prosecutorial rather than an adjudicator's role, NLRB v. Phelps, 136 F.2d 562 (5th Cir.1943); making harsh remarks evidencing a "predetermined" result in his mind, Helena Laboratories Corp. v. NLRB, 557 F.2d 1183, 1188 (5th Cir.1977); or making his decision on the key question in the case on the basis of his personal knowledge of and belief in the integrity of the party defendant, Roberts v. Bailar, 625 F.2d 125 (6th Cir.1980). The ALJ simply stated here, in the context of explaining the parties' agreement resolving the Secretary's motion for sanctions against Chaney Creek because of a dispute over Mr. Taylor's testimony, that Mr. Taylor's professional conduct as an attorney before the ALJ had always been of the "highest caliber." J.A. 296-98. This is not the type of statement that demonstrates judicial prejudice.
 
 
 32
 Chaney Creek would have us embrace the fanciful notion that the mere fact of the judge's crediting Maggard's witnesses over theirs can establish bias, when clear precedent directs otherwise. See NLRB v. Pittsburgh Steamship Co., 337 U.S. 656, 659, 69 S.Ct. 1283, 1285, 93 L.Ed. 1602 (1949); Conair Corp. v. NLRB, 721 F.2d 1355, 1367 (D.C.Cir.1983), cert. denied, 467 U.S. 1241, 104 S.Ct. 3511, 82 L.Ed.2d 819 (1984). Instead, we affirm the FMSHRC's well-reasoned conclusion that there is "no basis for the operators' assertion that the judge's treatment of Taylor's testimony establishes that the judge was biased against the operators." 9 F.M.S.H.R.C. at 1321.
 
 3. Dollar Branch's Liability
 
 33
 The operators assert that, because the mine owner, Dollar Branch, contractually gave Chaney Creek all rights to work, operate, control and supervise the mine, and because Dollar Branch had no direct employment relationship with Maggard, Dollar Branch should be dismissed as a defendant. The Commission, however, ruled that it was barred as a matter of law from considering this issue, because the operators did not raise it until after their petition for review had been filed. 9 F.M.S.H.R.C. at 1315 n. 2 (citing section 113(d)(2)(A)(iii) of the Mine Act, 30 U.S.C. Sec. 823(d)(2)(A)(iii) (1982), which limits the Commission's review authority to only those issues raised in petitions for discretionary review). The Commission refused to allow the operators to amend their petition in order to add this claim, because the operators demonstrated no "extraordinary circumstances" compelling the Commission to waive the rule, as required by 30 U.S.C. Sec. 816(a)(1) (1982). In a subsequent Order reaffirming this ruling, J.A. 388-89, the FMSHRC noted that the operators had "failed to show why the facts asserted by Dollar Branch relating to its involvement in this case could not have been ascertained and acted upon in a timely manner." J.A. 389. Neither have the operators alleged any extraordinary circumstance on appeal. We affirm the Commission's refusal to entertain these belated claims.[9]
 
 D. Interest on Backpay
 
 34
 Finally, Maggard argues that Chaney Creek owes him additional interest of $4,246.84 on his backpay award, which represents interest for the period from June 2, 1986 through February 12, 1988. It appears that there remains an unresolved factual question as to whether the amount of interest calculated to be paid Maggard was correct under the legal formula set forth in Secretary ex rel. Bailey v. Arkansas-Carbona Co., 5 F.M.S.H.R.C. 2042 (1983). We will remand this question to the Commission for settlement of the factual dispute over the proper amount of interest that is due to Maggard.
 
 III. CONCLUSION
 
 35
 In sum, we reverse the FMSHRC's sua sponte dismissal of Maggard's private discrimination suit under section 105(c)(3) of the Act and its consequent reversal of the ALJ's award of attorney's fees to his private attorney. We find that the ALJ's factual findings underlying his conclusion that Maggard was dismissed in violation of section 105(c)(1) are supported by substantial evidence, and we reject Chaney Creek's contentions that they were denied due process by the ALJ. We therefore affirm Maggard's award of backpay and interest. We uphold the Commission's determination that any issue pertaining to Dollar Branch's independent liability was waived because it was not brought in a timely fashion. Finally, we remand the case to allow the Commission to resolve the parties' dispute on interest, and to resolve any disputes remaining over the reasonableness of attorney's fees due to Maggard.
 
 
 36
 So ordered.
 
 
 
 *
 Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. Sec. 292(a)
 
 
 [1]
 Maggard was employed in a mining operation owned by Dollar Branch Coal Corporation and operated by Chaney Creek Coal Corporation. The owner and operator will be referred to collectively as "Chaney Creek."
 
 
 [2]
 Section 105(c)(2) of the Act provides, in pertinent part:
 Any miner or applicant for employment or representative of miners who believes that he has been discharged, interfered with, or otherwise discriminated against by any person in violation of [Sec. 105(c)(1) ] may ... file a complaint with the Secretary alleging such discrimination. Upon receipt of such complaint, the Secretary shall forward a copy of the complaint to the respondent and shall cause such investigation to be made as he deems appropriate. Such investigation shall commence within 15 days of the Secretary's receipt of the complaint.... If upon such investigation, the Secretary determines that the provisions of this subsection have been violated, he shall immediately file a complaint with the Commission, with service upon the alleged violator and the miner, applicant for employment, or representative of miners alleging such discrimination or interference and propose an order granting appropriate relief.
 
 
 [3]
 Section 105(c)(1) of the Act provides, in pertinent part:
 No person shall discharge or in any manner discriminate against or cause to be discharged or cause discrimination against or otherwise interfere with the exercise of the statutory rights of any miner, representative of miners or applicant for employment in any coal or other mine subject to this Act because such miner ... has instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding, or because of the exercise by such miner ... on behalf of himself or others of any statutory right afforded by this chapter.
 
 
 [4]
 The "continuous miner" is a machine with rotating drum heads that extracts coal by grinding it from the mine face. It is powered through a 500-foot long, 480-volt cable that trails behind it
 
 
 [5]
 Section 105(c)(3) states, in relevant part:
 Within 90 days of the receipt of a complaint filed under paragraph (2), the Secretary shall notify, in writing, the miner, applicant for employment, or representative of miners of his determination whether a violation has occurred. If the Secretary, upon investigation, determines that the provisions of this subsection have not been violated, the complainant shall have the right, within 30 days of notice of the Secretary's determination, to file an action in his own behalf before the Commission, charging discrimination or interference in violation of paragraph (1). The Commission shall afford an opportunity for a hearing ... and thereafter shall issue an order, based upon findings of fact, dismissing or sustaining the complainant's charges and, if the charges are sustained, granting such relief as it deems appropriate, including, but not limited to, an order requiring the rehiring or reinstatement of the miner to his former position with back pay and interest or such remedy as may be appropriate. Such order shall become final 30 days after its issuance. Whenever an order is issued sustaining the complainant's charges under this subsection, a sum equal to the aggregate amount of all costs and expenses (including attorney's fees) as determined by the Commission to have been reasonably incurred by the miner, applicant for employment or representative of miners for, or in connection with, the institution and prosecution of such proceedings shall be assessed against the person committing such violation.
 
 
 [6]
 At that time, Commission Procedural Rule 40(b) stated:
 A complaint of discharge, discrimination or interference under section 105(c) of the Act, may be filed by the complaining miner, representative of miners, or applicant for employment if the Secretary determines that no violation has occurred, or if the Secretary fails to make a determination within 90 days after the miner complained to the Secretary.
 (Emphasis added.) New Rule 40(b), which became effective with the Commission's decision in Gilbert v. Sandy Fork Mining Co., 9 F.M.S.H.R.C. 1327 (1987), the companion case to this case, deleted the highlighted final clause of the sentence.
 
 
 [7]
 Section 113(d) of the Mine Act, 30 U.S.C. Sec. 823(d) (1982), sets forth the procedures to be followed in seeking Commission review of an ALJ decision, and establishes the scope of the Commission's review authority. That section states, in relevant part:
 (2)(A)(i) Any person adversely affected or aggrieved by a decision of an administrative law judge, may file and serve a petition for discretionary review by the Commission of such decision within 30 days after the issuance of such decision. Review by the Commission shall not be a matter of right but of the sound discretion of the Commission.
 ....
 (iii) ... Review by the Commission shall be granted only by affirmative vote of two of the Commissioners present and voting. If granted, review shall be limited to the questions raised by the petition.
 (B) ... If a party's petition for discretionary review has been granted, the Commission shall not raise or consider additional issues in such review proceedings except in compliance with the requirements of this paragraph.
 (Emphasis added.)
 
 
 [8]
 Since the Rule 40(b) question was not properly before the Commission, we need not decide whether it acted lawfully when it applied its new Rule 40(b) retroactively to dismiss Maggard's complaint. Nor do we make any general findings on the propriety of the new Rule 40(b). We only note here that, during the course of oral argument of the Chaney Creek and Gilbert cases, counsel for the Secretary appeared to concede that the government had no claim that it wished to pursue in defense of the Commission's retroactive application of the new rule; in fact, the government appeared solely for the purpose of defending the new rule's prospective application
 
 
 [9]
 Nevertheless, we cannot help but note that in Association of Bituminous Contractors v. Andrus, 581 F.2d 853 (D.C.Cir.1978), this court specifically found that an "owner" could be held liable as an "operator" under the Act regardless of the owner's level of activity in the mine's operations. The operators have laid no legal or logical foundation for their assertion that Bituminous Contractors should be overruled