**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERURBAN GAS CORPORATION, Respondent.**

No. 14961.

United States Court of Appeals Sixth Circuit.

May 27, 1963.

Paul J. Spielberg, Washington, D. C., Stuart Rothman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, Allison W. Brown, Jr., Attorney, N.L.R.B., Washington, D. C., on brief, for petitioner.

Leonard A. Keller, Detroit, Mich., James E. Frazer, Frazer & Popkin, Detroit, Mich., on brief, for respondent.

Before CECIL, Chief Judge, and MILLER and O'SULLIVAN, Circuit Judges.

O'SULLIVAN, Circuit Judge.

This is a petition by the Labor Board for enforcement of its order finding respondent, Interurban Gas Corporation, guilty of violating Section 8(a) (1) and (3) of the National Labor Relations Act, as amended (29 U.S.C.A. § 158(a) (1) and (3)) by discharging one of its employees, Donald Gillingham, because of his union activities. Respondent resists enforcement on the ground that there is not substantial evidence on the record as a whole to support the Board's findings and order.

Respondent is a corporation engaged in the sale and distribution of propane gas in southeastern Michigan. Gillingham, the discharged employee, worked as a driver-salesman for respondent from October, 1959, until his discharge on March 14, 1961. The testimony adduced before the trial examiner presents two conflicting views of the reasons for Gillingham's discharge. There was testimony that at an informal "grievance" meeting Gillingham had asked a supervisor, Ralph Wyatt, if he had any objections to a union, and that Wyatt had replied, "we are not anti-union around here." On another occasion, Gillingham, in the presence of Wyatt, discussed the matter of a union with another employee. Some two or three weeks after this latter event, Gillingham and two other employees, one Hodge and Gillingham's brother, filled out and signed union authorization cards. The three men then attempted to solicit the signature of a fourth employee, one Sloan. They discussed the matter at some length and, finally, Sloan said he was not interested but would think about it. Sloan then went into the company office.

Gillingham went to the garage where he spoke to another employee about signing a union card, and, as he was leaving the garage, Wyatt approached him and said, "I'm going to have to let you go." There was no direct evidence that Sloan had told Wyatt that Gillingham was soliciting signatures for the union.

Finally, the General Counsel introduced the testimony of a waitress employed in a restaurant located on respondent's property. This witness, Flossie Begeman, who was also Hodge's mother-in-law, testified that after the discharge, Wyatt and another supervisor, one Milstead, came into the restaurant where she was employed. She testified that she was acquainted with both men and that Milstead told her, in connection with Gillingham's discharge, "they was trying to get the union in and Don (Gillingham) was the ringleader * * * that he (Milstead) wasn't going to have any union, that before he would let any of the employees tell him what to do or how to run the job for as many years as he had been into the business, that he'd fire the whole G—— D—— bunch and hire new men."

■ On the other hand, the respondent's proofs showed that Wyatt had no knowledge of Gillingham's union activities, that Gillingham was guilty of several unexplained shortages of gas cylinders, that Gillingham was involved in other trouble with customers, and that the discharge was because of Gillingham's misconduct as an employee rather than for any union activity on his part. Wyatt and Milstead both denied that the statement attributed to Milstead by the witness Begeman was ever made. On the basis of this disputed evidence, the trial examiner found that Gillingham's discharge was motivated because of his union activities. He apparently believed the quoted testimony of Flossie Begeman. The Board affirmed such finding and ordered Gillingham's reinstatement with back pay. While it would tax our credulity to accept Flossie's story,[1] we must leave her credibility to the trial examiner and the Board. N. L. R. B. v. Walton Manufacturing Co., 369 U.S. 404, 408, 82 S.Ct. 853, 7 L.Ed.2d 829.

■ Our review here is limited to the question whether there is substantial evidence on the record as a whole to support the Board's findings and order. Title 29 U.S.C.A. § 160(e); Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. Likewise,

> " 'It is well settled that the credibility of witnesses and the reasonable inferences to be drawn from the evidence are matters for determination by the Trial Examiner and the Board.' N. L. R. B. v. Bendix Corp., 299 F.2d 308, 310, C.A.6, cert. denied [371 U.S. 827] 83 S.Ct. 47 [9 L.Ed. 2d 65]. Where credibilty accorded witnesses by the trial examiner is such as would justify conflicting inferences with reference to a discharge, 'we are not permitted to weigh the evidence, resolve its conflicting inferences, nor draw our own inferences therefrom. The Board's choice between two conflicting views may not be set aside even though the court would justifiably have made a different choice had the matter been before it de novo.' 299 F.2d at page 310." N. L. R. B. v. Plaskolite, Inc., 309 F.2d 788, 789, 790 (C.A.6, 1962).

See also, N. L. R. B. v. Walton Mfg. Co., 369 U.S. 404, 82 S.Ct. 853, 7 L.Ed.2d 829; N. L. R. B. v. Power Equipment Co., 313 F.2d 438 (C.A.6, 1963).

■ Applying these standards, we hold that there is substantial evidence on this record as a whole to sustain the Board's findings and order.

Enforcement granted.

---

1. Just why management representatives, who had made no anti-union statements to its employees and who had ample and solid grounds for discharging Gillingham, would provide the only substantial evidence to support the general counsel's case by "confessing" a discriminatory purpose to a waitress who happened to be the mother-in-law of a union leader, is hard to understand.