**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**BARBERTON PLASTICS PRODUCTS, INC., Respondent.**

No. 16172.

United States Court of Appeals Sixth Circuit.

Dec. 22, 1965.

Melvin Pollack, Atty., N. L. R. B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Assoc. Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Duane R. Batista, Atty., N. L. R. B., Washington, D. C., on the brief.

Roy E. Browne, of Hershey, Browne, Wilson, Steel & Wolfe, Akron, Ohio, for respondent.

Before PHILLIPS, Circuit Judge, and BROWN and GREEN, District Judges.*

HARRY PHILLIPS, Circuit Judge.

The National Labor Relations Board has petitioned for enforcement of its orders issued against respondent, reported at 141 N.L.R.B. 174 and 146 N.L.R.B. 393.

The Board found that respondent violated § 8(a) (1) of the Act, 29 U.S.C. § 158(a) (1), by coercively interrogating its employees concerning their union activity and by threatening them with economic reprisals for such activity. The Board further found that respondent violated § 8(a) (3) and (1) of the Act, 29 U.S.C. § 158(a) (3) and (1), by discriminatorily discharging employee Paul Hetrick because of union activity. The first order directed that respondent cease and desist from the unfair labor practices found and from interfering in any manner with or restraining or coercing its employees in their rights to self-organization, required the posting of the customary notices and directed that Hetrick be reinstated with back pay. In its second order the Board awarded Hetrick the sum of $3,069.96, plus six per cent interest, as back pay for the period from April 30, 1962, to June 30, 1963, plus additional undetermined amounts that may thereafter accumulate until Hetrick is rein-

* Honorable Bailey Brown, United States District Judge for the Western District of Tennessee, and Honorable Ben C. Green, United States District Judge for the Northern District of Ohio, sitting by designation.

stated in his former or a substantially equivalent position.

We grant enforcement of all parts of the first order of the Board, 141 N.L.R.B. 174, except that part directing the reinstatement of Hetrick with back pay. We deny enforcement of the second order of the Board. 146 N.L.R.B. 393.

■ We do not find it necessary to discuss in detail the Board's findings of § 8(a) (1) violations. We have concluded that these findings are supported by substantial evidence on the record as a whole. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L. Ed. 456.

■ With respect to that part of the Board's first order directing the reinstatement of employee Hetrick with back pay, the question to be determined is whether substantial evidence on the record as a whole supports the finding that this employee was discharged because of union activity. Respondent contends that he was discharged for an accumulation of acts of irresponsibility, insubordination and inefficiency and not because of union activity.

■ In determining this question, we apply the well-settled rule that if Hetrick's discharge was motivated wholly or even in part by his union activity, it was illegal despite the existence of adequate cause for firing him. Wonder State Mfg. Co. v. N. L. R. B., 331 F.2d 737 (C.A.6) ; N. L. R. B. v. Elias Brothers Big Boy, Inc., 325 F.2d 360, 366 (C.A. 6).

The record is replete with evidence of acts of insubordination, inefficiency and misconduct on the part of Hetrick, who was employed as a handy man and to do general maintenance work. There can be no doubt from the record that respondent had many adequate grounds for discharging him. The trial examiner stated that "for the purposes of this case I have assumed that adequate cause existed for Hetrick's discharge." His summary of the evidence to this effect is set forth in the margin.[1] There is substantial evidence establishing that Hetrick was

---

[1] "1. Hetrick was insubordinate, refusing to perform some tasks at the request of Supervisor Baker until ordered to do so by Vice President Bruce Miller, and constantly griped or complained to supervisors and employees that Baker had no right to give him orders.

"2. Hetrick refused or neglected to follow safety procedures in that :

"a. He would not wear safety goggles, even though a State safety inspector warned him to do so, and gave him a pair for the purpose.

"b. He created fire hazards by leaving kerosene exposed in open containers, so that a State inspector once had to reprimand him for it.

"c. He failed to make use of a safety guard or hood when operating the saw.

"d. The State safety inspector, Robert Leonard, found 11 safety violations, allegedly attributable to Hetrick. Although Hetrick corrected these for a short while, he soon resumed his habit of ignoring safety procedures.

"3. Hetrick was involved in 12 accidents compensable under the Ohio Workmen's Compensation law. The cost to respondent of these accidents was 74 percent of its total costs under this law in the 5 years preceding his discharge.

"4. Hetrick engaged in unusually heavy absenteeism, i.e., about 1,300 hours in 5 years.

"5. Hetrick threatened physical violence to employees and to Supervisor Starcher.

"6. Hetrick twice engaged in fights with Starcher, in one of which Hetrick drew a knife.

"7. Hetrick often failed to perform work tasks on time so that Vice President Miller often had to check on him.

"8. He made articles for himself at the plant on company time.

"9. He negligently repaired some machinery, thereby causing damage to it; and he also damaged some gears as well in repairing them.

"10. He often left empty cartons and debris on stairs or in hallways or aisles, thereby creating hazards of stumbling or tripping thereon and imperiling the safety of others.

"11. He idled away his time talking to and annoying the girls in the office, and also neglected his cleaning duties in the office so that trash often overflowed on the floor.

"12. He often boasted that he could not be laid off except by a lump sum payment to him of $50,000, because he

guilty of the acts as summarized by the trial examiner, thereby affirmatively demonstrating the existence of grounds for the discharge.

After being discharged by respondent, Hetrick obtained a job as truck driver with the I. A. Barnett Co. of Barberton, Ohio. After ten months he was discharged for "misconduct and indifferent work," which included truck accidents, numerous irresponsible acts and repeated absenteeism.

Although assuming and recognizing that adequate cause existed for the discharge of this employee, the trial examiner nevertheless found that union activity was the actual cause which prompted respondent to terminate Hetrick's employment.

From a reading of the entire record we find no substantial evidence to support this conclusion. The only evidence to this effect is Hetrick's own self-serving testimony, which not only is not corroborated but is strongly contradicted. Hetrick is shown to be a highly interested witness whose substantial back pay award must stand or fall upon his own testimony. The record also establishes that he has been guilty of making false statements on more than one occasion.[2]

This court has recognized repeatedly that the credibility of witnesses is an issue to be determined by the trial examiner and Board as trier of the facts. N. L. R. B. v. Nelson Mfg. Co., 326 F.2d 397 (C.A.6); N. L. R. B. v. Interurban Gas Corp., 317 F.2d 724 (C.A.6); N. L.

R. B. v. Bendix Corp., 299 F.2d 308 (C.A. 6) cert. denied, 371 U.S. 827, 83 S.Ct. 47, 9 L.Ed.2d 65. However, we have held that, under circumstances comparable to those here presented, the uncorroborated testimony of an untrustworthy and interested witness, who stands to profit from a back pay award, may be held under such facts and circumstances not to constitute substantial evidence on the record considered as a whole. N. L. R. B. v. Elias Brothers Big Boy, Inc., 327 F.2d 421, 425 (C.A.6) and cases therein cited; cf. N. L. R. B. v. Mt. Vernon Telephone Corp., 352 F.2d 977 (C.A.6).

In N. L. R. B. v. Columbian Enameling & Stamping Co., 306 U.S. 292, 300, 59 S.Ct. 501, 505, 83 L.Ed. 660, the Supreme Court said:

"Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' * * *."

As said by the Supreme Court in Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 496, 71 S.Ct. 456, 469:

"We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. * * * The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, de-

---

had suffered a disability arising from an injury on the job.

"13. He smoked in prohibited areas.

"14. He inexcusably delayed the April 1962 inventory by postponing the weighing of grumments for an inordinate length of time.

"15. His work was inadequate, especially in the packing of torsos. This was so notwithstanding specific written instructions to him on April 4 to heed orders of Supervisor Baker concerning such packing.

"16. He failed to remove some steel shafts which had been delivered and left in a hallway by the delivery truck."

2. For example, as expressed by the trial examiner, "he submitted an employment application form studded with false information." In several instances his testimony is contradicted by a number of other employees. Four employees testified that Hetrick boasted that he had a "lifetime job" and could not be fired, because he had cut his hand on company property. Hetrick denied having ever made such a statement. Several employees testified that Hetrick had threatened to kill Ed Starcher, a foreman, on one occasion, and drew a knife on him on another occasion; Hetrick flatly denied all of these charges.

pends largely on the importance of credibility in the particular case."

In the same case the Court said:

"The substantiality of evidence must take into account whatever in the record fairly detracts from its weight. * * * Congress has merely made it clear that a reviewing court is not barred from setting aside a Board decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view." 340 U.S. at 488, 71 S.Ct. at 464.

Substantial evidence on the record considered as a whole establishes that Hetrick had been employed by respondent as a handy man for approximately five years. At one time he had been a satisfactory employee, but had become increasingly unreliable and insubordinate, particularly during the six month period immediately preceding his discharge. Bruce Miller, respondent's vice president, had urged over a period of months that Hetrick must be fired. His father, Francis Miller, respondent's president, was reluctant to discharge this employee, and after each incident would decide to give him another chance. Bruce Miller stated that Hetrick had become familiar with the operations because of his length of service and was valuable in many respects; and that following acts of neglect or misconduct, Hetrick after a brief period of "flaring up" would "simmer down," talk reasonably and promise to do better.

Hetrick was given no pay raise during the nineteen months between July 1960 and February 1962, although pay raises were made to some of the other employees. In February 1962, Francis Miller gave him a raise of from $2.10 to $2.25 per hour, expressing the hope that this raise would induce him to improve his performance. Instead, the evidence shows that the attitude of this employee became worse instead of better. Early in April, just before Francis Miller was leaving for a month's absence, he gave his son permission to discharge Hetrick if the situation did not improve. When Hetrick continued to be remiss in his work, Bruce Miller punished him by not permitting him to work during the period April 20–April 27, when the plant was not in operation, although other maintenance employees continued to work preparing for reopening. During this period while the plant was closed down, Bruce Miller discovered that Hetrick had failed to obey instructions to clean a pump and had left kerosene in an open pail constituting a fire hazard. Miller then told Edward L. Starcher, a foreman, that "This is the last straw. I cannot continually check every detail that we ask Hetrick to do, and I am getting rid of him immediately." Miller thereupon telephoned Hetrick and instructed him to come to the company office the following Monday. Hetrick brought his wife to the office with him on that occasion. When Miller told him about the pump, Hetrick retorted that "someone was out to get him and he'd get even." Miller thereupon discharged him in the presence of his wife. There is no evidence that any contention was made on this occasion that Hetrick was being discharged for union activities. Hetrick did not so testify and his wife was not called as a witness.

In concluding that Hetrick in fact was discharged for union activities, the trial examiner found that Bruce Miller on one occasion warned Hetrick that if the plant became organized, Hetrick would be one of the first to be fired. In context, Miller stated that, in a discussion with Hetrick concerning his unsatisfactory performance, he told the employee that "if we had a union in the plant we would be working with a contract, and that the contract is a two-way contract. I told him that if he continued the same type of activity that he had been acting at that time, that he wouldn't last under any union contract."

■ The trial examiner drew an inference of discrimination from the fact that respondent tolerated the shortcom-

ings of the employee over a period of five years, granted him a pay raise two months before he was fired, and did not discharge him until after he had become active on behalf of the union. Ordinarily, this is a permissible inference. N. L. R. B. v. Elias Brothers Big Boy, Inc., supra, 325 F.2d 360, 366 (C.A.6); N. L. R. B. v. Tru-Line Metal Products Co., 324 F.2d 614 (C.A.6), cert. denied, 377 U.S. 906, 84 S.Ct. 1167, 12 L.Ed.2d 177; N. L. R. B. v. Wayne W. Wilson Co., 311 F.2d 1 (C.A.6). The Board is the trier of the facts, and it is the general rule that reasonable inferences drawn by the Board or trial examiner from the evidence will not be disturbed by this court. Obviously, however, an inference cannot stand if it is not drawn from substantial evidence on the record considered as a whole. N. L. R. B. v. Mt. Vernon Telephone Corp., supra; N. L. R. B. v. Coats & Clark, Inc., 231 F.2d 567, 572 (C.A.5).

■ Respondent had a right to discharge Hetrick for inefficiency and insubordination, so long as the discharge was not motivated in whole or in part because of union activity. "[D]iscipline motivated entirely by a reason not proscribed by the NLRA is not an unfair labor practice merely because it coincides with anti-union sentiment." Tompkins Motor Lines, Inc. v. N. L. R. B., 337 F.2d 325, 330 (C.A.6).

As said by the Supreme Court, speaking through Chief Justice Hughes, in N. L. R. B. v. Jones Laughlin Steel Corp., 301 U.S. 1, 45–46, 57 S.Ct. 615, 628, 81 L.Ed. 893:

> "The Act does not interfere with the normal exercise of the right of the employer to select its employees or to discharge them. The employer may not, under cover of that right, intimidate or coerce its employees with respect to their self-organization and representation, and, on the other hand, the Board is not entitled to make its authority a pretext for interference with the right of discharge when that right is exercised

for other reasons than such intimidation and coercion."

■ The fact that an employee was participating in activities on behalf of a union does not prevent his discharge for cause. N. L. R. B. v. Dixie Terminal Co., 210 F.2d 538, 540, 43 A.L.R.2d 902 (C.A. 6), cert. denied, 347 U.S. 1015, 74 S.Ct. 871, 98 L.Ed. 1138; N. L. R. B. v. Mylan-Sparta Co., 166 F.2d 485, 491 (C.A. 6).

An order will be entered granting enforcement of all of the first order of the Board, 141 N.L.R.B. 174, except that part requiring reinstatement of Paul Hetrick with back pay. Enforcement of the second order of the Board, 146 N.L.R.B. 393, is denied.