**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**G & S METAL PRODUCTS COMPANY, INC., Respondent.**

Nos. 73-1142, 73-1154.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 19, 1973.

Decided Dec. 21, 1973.

David Miller, N.L.R.B., for petitioner; Peter G. Nash, Gen. Coun., John S. Irving, Deputy Gen. Coun., Patrick Hardin, Associate Gen. Coun., Elliott Moore, Acting Asst. Gen. Coun., Robert G. Sewell, Attys., National Labor Relations Board Washington, D. C., on brief.

Joseph L. Newman, Cleveland, Ohio, on brief for respondent.

Before PHILLIPS, Chief Judge, and PECK and LIVELY, Circuit Judges.

PER CURIAM.

These cases are before the Court on the application of the National Labor Relations Board (hereinafter "the Board") for enforcement of its orders issued July 28, 1972, and October 12, 1972, against G & S Metal Products Company, Inc., (hereinafter "the Company"). The Board's decisions are reported at 198 N.L.R.B. No. 65 and 199 N.L.R.B. No. 100. The two enforcement proceedings were consolidated on appeal.

The issues presented by the Company all relate to whether the Board's findings are supported by substantial evidence on the record as a whole.

The Company is engaged in the manufacture, sale and distribution of metal housewares. A number of the Company's employees indicated an interest in union representation in February of 1971. An organizational campaign was begun in March of 1971 when contacts were established with the Allied Industrial Workers of America (hereinafter "the Union").

Odessa Austin and Tina Scales were employed by the Company as packers for a short time preceding the unionization activity. On March 7, 1971, Austin contacted the Union and she and Scales were given a number of Union authorization cards. The next day both women became members of the Union's organizing committee, spoke to other employees, and distributed authorization cards. On March 22, Austin began to arrange for a Union meeting at her home. That same day the Company informant, Bobbie Jean Chase, reported Austin and Scales' involvement. Later the same day (March 22) Austin was discharged and told that the reason for the discharge was dissatisfaction with her work. Scales was discharged without explanation on March 29.

Juanita Smith and Mable Head were also employed as packers by the Company and each had about two years service. Both signed authorization cards, became members of the Union organizing committee and otherwise involved themselves in union activities in early 1971. Although neither worker had previously received verbal or written reprimands regarding attendance or performance, they were discharged for absenteeism. Three or four days prior to the discharges Smith was warned by a lower echelon supervisor that she was being set up to be fired. The supervisor testified that he was told that the set up was initiated because Smith was head of union activity.

John Chase was a maintenance laborer hired about six months before the unionization drive started. Although he had been reprimanded for various reasons related to his work, the Company did not take action against him until he became an active advocate of union representation. During the first week of February, 1971, Chase tried to initiate organization of the employees. About that same time his mother, Bobbie Jean Chase, told a supervisor that "it was John that started the Union effort." He was discharged February 12, and told that he was not needed anymore.

Shirley Lowe worked as a punch press operator and in various other capacities for the Company for two years. She signed a Union authorization card in April or May of 1971. On June 3, 1971, Lowe joined in the picketing of the Company during a one-day strike and later met with the Company as a member of the Union committee attempting to reach a settlement of the strike issues. In July her physician gave her a slip stating that she had a swollen hand which might have been caused by her operating the punch press and suggesting an alternative job. In spite of the fact that Lowe was experienced in a number of other jobs that the Company was seeking to fill through public notices, she was refused a job transfer and terminated.

Bobbie Jean Chase, the employee who had acted as informant at the request of Company officials, evidenced a change of heart after identifying a number of fellow employees as union people and she herself joined in organizational activities. In addition, she picketed during the June 3rd strike. The day after the strike both the Company president and a supervisor expressed their unhappiness at her newfound loyalties. After the picketing incident, Chase, who the Company knew had suffered a job-related back injury, was assigned to "sampling work" which required strenuous lifting. When she protested and requested lighter work she was told it was the lightest work available and was asked to tear up the physician's slip. She refused and was fired.

Virginia Small was employed as a packer for a little over a year. She signed an authorization card, solicited other employees to sign cards, attended Union meetings and was a member of the Union's organizing committee. She also participated in the meeting between the Company and the Union organizing committee dealing with the June 3rd strike. On the night of October 13, 1971, she became ill and upon medical examination was was told that she was in danger of suffering a miscarriage. A

Company supervisor told her that she could come back to work when she got a doctor's release. While out sick she was subpoened by the Board's General Counsel to appear at the unfair labor practices hearing involving the Company. During cross-examination the Company's attorney made the following statement to her: "May I inform you that you are not in the employ of the Company. That is all."

On the basis of the foregoing facts the Board, in 198 N.L.R.B. No. 65, found that the Company had violated Section 8(a)(3) and (1) of the Act by discharging the employees because of their union activities, and had violated Section 8(a)(1) by interrogating an employee concerning the union activities of fellow employees and requesting her to inform it of such activity. In 199 N.L. R.B. No. 100, the Board found that the Company had discharged an employee because she gave testimony at a Board hearing contra to the demands of Section 8(a)(4). The Board ordered the Company to cease its unfair labor practices, halt its interference with employees' rights, offer immediate reinstatement to the eight discriminatees and pay them for loss of earnings.

■ The issues raised by the Company are factual. As we recently stated, "in reviewing the credibility findings and the inferences drawn by the Board from the evidence, the test for a reviewing court is whether the conclusions are reasonable in light of the proven facts." N.L.R.B. v. Paschall Truck Lines, Inc., 469 F.2d 74, 76 (6th Cir. 1972). In the case before us the Administrative Law Judge received evidence that would indicate illegal employer interference with union organizational activities. The discharging of numerous employees, some with good work records, within a short time after they became involved in union activities raised at least a reasonable inference that they were fired because of their union activities. The Board is permitted to infer unlawful intent from the circumstances surrounding such dis-

charges. N.L.R.B. v. Lawson Printers, Inc., 408 F.2d 1004 (6th Cir. 1969).

■ Further evidence established that the activities of an informant interfered with the organizational activities of other employees, and the circumstances surrounding the discharge of Virginia Small suggest that she was fired because of the informant's testimony. In light of the above, we conclude that the Board's conclusions in these cases are supported by substantial evidence on the record as a whole.

The enforcement of the Board's orders is granted.