**LOCAL UNION NO. 948, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, (IBEW), AFL–CIO, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

No. 81–1061.

United States Court of Appeals, Sixth Circuit.

Argued March 16, 1982.

Decided Dec. 27, 1982.

Charles Looman, Fenton, Mich., for petitioner.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Vivian Miller, Washington, D.C., for respondent.

Before MERRITT and JONES, Circuit Judges, CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Local Union 948 of the International Brotherhood of Electrical Workers, AFL–CIO, petitions for review of an order of the National Labor Relations Board. The Board found that the Union had violated Secs. 8(b)(2) and 8(b)(1)(A) of the National Labor Relations Act because of its discriminatory treatment toward non-members of Local 948. The Board has ordered relief and has filed a cross-application for enforcement of its order. We believe that the Administrative Law Judge and the Board have made proper credibility determinations and, therefore, grant enforcement.

Lawrence Moore, a member of Local 569, IBEW in San Diego, California, and James Rawson, a member of Local 103, IBEW in Melford, Massachusetts, are travelers.[1] Moore and Rawson came to the Local Union's area seeking work. On May 24, 1979, they went to the union hall in Flint, Michigan in order to register on the Local's out of work book.[2] Ray Mullaly, the Local's

---

1. A traveler is a member of the IBEW who works on a temporary basis within the geographical jurisdiction of a local union other than his own.

2. The collective bargaining agreement between the Flint Division, Michigan Chapter, National Electrical Contractors Association, Inc. and the Union contains an exclusive hiring hall provision. Applicants for referral work register in one of four priority groups, which are listed in separate books. Group I is reserved for applicants who reside in the geographical area of the Local. Group II contains applicants who are travelers with the same employment skills as those in Group I. These groups establish the priority of employment referral; exhaustion of those listed in the first group is required

business representative, told them that no work was available that day and thus signing the out of work list for travelers would be pointless. They left, but returned the next day and signed the list for travelers.

On May 31, two jobs became available at the Hammer and Smith Electric Co. jobsite. John Hillis, the Local's office manager, called Moore and Rawson into Mullaly's office that morning. Mullaly asked to see their current dues receipts in order to verify their membership. Moore testified that Mullaly told them that he ran the Local, that he wanted no trouble from them, and that if they were laid off or quit, they should not return.

Moore and Rawson further testified that they asked to be referred to Universal Electric Co. or Petras Electric Co. jobsites because of the large amount of overtime available at those jobsites. Moore stated that Mullaly replied that Universal and Petras had not requested referrals and that Hammer and Smith would provide as much overtime work as the other companies.

Moore and Rawson worked for Hammer and Smith until Friday, June 8. On that day, Rawson heard from an electrician working at Universal that Petras and Universal employees were working 70 hours per week rather than the 45 hours per week worked at Hammer and Smith. The general foreman for Hammer and Smith also told them that Universal's general foreman had called and said that Universal had asked the Local for the referral of five additional electricians.

Moore and Rawson decided that Rawson would call Mullaly to inquire about the possibility of working at Universal or Petras. Rawson testified that when he called, Mullaly replied that Universal and Petras had made no requests for referrals and that "if [they] quit or got fired, not to bother coming back in there." Mullaly denied having any conversation with Moore and Rawson until June 14 or 15.

On Monday, June 11, after they had left Hammer and Smith, Moore and Rawson returned to the hall and again signed the out of work book. They appeared each morning without being referred until June 15. On that morning, Hillis called them into Mullaly's office. Mullaly told them that four electricians had quit a job with the Weinstein Electric Co. which had a 48 to 50 hour work week. Moore replied that the job was not much better than the one they had left at Hammer and Smith and that they would prefer to remain on the list until Universal or Petras requested a referral.[3] According to Moore, Mullaly said that "he wasn't going to let [them] ride the book, that [they] were off the book, and that [they] might as well get out of his jurisdiction." When Moore asked him to reconsider, Mullaly apparently replied that the Universal and Petras jobs were "reserved for local men and if [they] thought travelers were going to get on that job [they were] crazy." Moore testified that Mullaly told them to leave because he was "sick of you Philadelphia lawyers coming in here to run [his] organization." Rawson's testimony corroborated Moore's recollection of the incident.[4]

Mullaly admitted that he had had a conversation with Moore and Rawson on June 15. He asserted that the conversation was limited to an offer of the job at Weinstein and their expression of a desire to work for Universal or Petras. Mullaly testified that

---

before those in the second group may be referred.

**3.** Waiting for a better position is known as "riding the book." The collective bargaining agreement provides that an employee who refused a referral "shall have his name replaced at the bottom of the out of work list within his Group." The Local, however, allowed applicants to refuse one referral without losing their position on the out of work list. Only after an applicant declined to take a second referral

would the Local drop his name to the bottom of the list. A traveler might, therefore, refuse a referral in the hope that a better job would come along.

**4.** Mullaly admitted that he had told Moore and Rawson not to return to the hall, but explained that he had "jokingly said don't come back to the hall if you get laid off or get fired because all we have is forty hours of work, and they were looking for an overtime job."

he told them that Universal and Petras had not sought referrals. Hillis corroborated Mullaly's testimony concerning this and other conversations held in Mullaly's office.

Moore testified that about three weeks later he returned to the hall and asked Mullaly to reconsider and to allow them to register in the out of work book. Mullaly refused, saying that "the situation was the same as far ... as he was concerned and [Moore] could just go on rolling down the road." Mullaly denied having any conversation with Moore or Rawson after June 15. Mullaly testified that Moore and Rawson lost their places on the out of work list when they failed to appear on July 9, resign day.[5]

On July 10, 1979, Moore and Rawson filed an unfair labor practice charge against the local. The Administrative Law Judge, after hearing the testimony, credited Moore and Rawson. He concluded that the Local had violated Secs. 8(b)(1)(A) and 8(b)(2) of the National Labor Relations Act, 29 U.S.C. Secs. 158(b)(1)(A) and (b)(2), by refusing to permit Moore and Rawson to remain on the out of work list because they were travelers and not members of the Local. The Board agreed with the Administrative Law Judge and entered an order requiring the Local to cease and desist from the unfair labor practice, to place Moore and Rawson on the list and refer on a non-discriminatory basis, to reimburse them for any pay lost, and to post an appropriate notice.

The parties do not dispute the legal issue of whether a union may discriminate against an employee in its administration of a hiring hall. Sec. 8(b)(2) makes it an unfair labor practice to cause or attempt to cause an employer to discriminate against an employee with respect to hire, tenure, or terms or conditions of employment for the purpose of encouraging or discouraging membership in a labor organization. 29 U.S.C. Sec. 158(b)(2). Section 8(b)(1)(A) makes it an unfair labor practice for a union to coerce employees in their rights to organize or refrain from organizing.[6] 29 U.S.C. Sec. 158(b)(1)(A). The policy underpinning these provisions is to insulate employees' jobs from their organizational rights in order that they may "abstain from joining any union without imperiling their livelihood." *Radio Officers' Union v. NLRB*, 347 U.S. 17, 40, 74 S.Ct. 323, 335, 98 L.Ed. 455 (1954).

An exclusive hiring hall arrangement necessarily tends to encourage union membership. Because the Act only proscribes encouragement or discouragement of union membership which is accomplished through discrimination, a union does not commit an unfair labor practice unless it administers an exclusive hiring hall in a discriminatory or arbitrary fashion. *Local 357, International Brotherhood of Teamsters Union v. NLRB*, 365 U.S. 667, 675–76, 81 S.Ct. 835, 839–40, 6 L.Ed.2d 11 (1961); *NLRB v. Local Union 633, United Ass'n of Journeymen, etc.*, 668 F.2d 921 (6th Cir. 1982) (per curiam). In order to find a violation of the Act in the operation of an exclusive hiring hall, the Board need not have specific evidence of intent to encourage or discourage union membership; the Board may find a violation where the union refuses to place non-members on the referral list or gives members preference on the referral list or give members preference over non-members in referrals.[7] *NLRB v. Local No.*

---

5. The collective bargaining agreement provides that in order to maintain his position on the out of work list, an applicant must "appear in person to inform the Union of his continued availability for employment on the second Monday of each month" which was July 9, when Moore and Rawson were removed from the list.

6. The only exception to these general principles is that lawful union security agreements may require payment of uniform union dues and invitation fees, as a condition of employment, on or after the thirtieth day of employment. 29 U.S.C. Sec. 158(a)(3).

7. The Local's preference of members over non-members in referrals from the hiring hall permits the Board to infer a discriminatory intent.
 This evidence which indicated that the Union has favored a Union member over a similarly situated non-member provides the Board with sufficient grounds for inferring that the "true purpose" or "real motive" of the disparate treatment is to encourage and

*86, Sheet Metal Workers Int'l Ass'n,* 491 F.2d 1017 (6th Cir.1974); *NLRB v. United Ass'n of Journeymen and Apprentices, etc.,* 424 F.2d 390 (6th Cir.1970). The Board's order should be enforced, therefore, if substantial evidence supports its finding that the Local refused to permit Moore and Rawson to remain on the out of work list because they were travelers and not members of the Local.

 The issue presented in this case is whether the Administrative Law Judge and the Board made proper credibility determinations. The Local contends that the Administrative Law Judge should not have credited the testimony of Moore and Rawson and should have accepted the testimony of Mullaly and Hillis. The Board argues that Administrative Law Judge properly resolved the conflicting testimony.

The standard for review for the Board's determinations of credibility is narrow. Because the Administrative Law Judge and the Board are the triers of fact in the first instance, their credibility resolutions are to be accorded considerable weight on review. *NLRB v. Barberton Plastics Products, Inc.,* 354 F.2d 66, 69 (6th Cir.1965) ("the credibility of witnesses is an issue to be determined by the trial examiner and Board as trier of the facts"); *NLRB v. Nelson Mfg. Co.,* 326 F.2d 397, 398 (6th Cir.1964); *NLRB v. Interurban Gas Corp.,* 317 F.2d 724, 725 (6th Cir.1963); *N.L.R.B. v. Bendix Corp.,* 299 F.2d 308, 310 (6th Cir.), *cert. denied,* 371 U.S. 827, 83 S.Ct. 47, 9 L.Ed.2d 65 (1962). *See NLRB v. Fredrick's Foodland, Inc.,* 655

F.2d 88, 89 (6th Cir.1981) (per curiam). The Board's choice between conflicting testimony will not be set aside simply because this court "would justifiably have made a different choice had the matter before it been *de novo.*" *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1950). *See Interban Gas Corp., supra; Bendix Corp., supra.* We will set aside the Board's determination of credibility only where its resolution is unreasonable. *NLRB v. Com General Corp.,* 684 F.2d 367 (6th Cir.1982) ("Reviewing the credibility findings and inferences drawn by the Board from the evidence, the test is whether the Board's conclusions are reasonable in light of the proven facts"); *NLRB v. G & S Metal Products Co.,* 489 F.2d 441, 443 (6th Cir.1973); *NLRB v. Paschall Truck Lines,* 469 F.2d 74, 76 (6th Cir.1972) ("In reviewing credibility findings and inferences drawn by the Board from the evidence the test for a reviewing court is whether the conclusions are reasonable in light of the proven facts. Thus, this court may not substitute its judgment on the question whether the inference drawn is the correct one or whether a different inference would be better supported, but is limited to the determination of reasonableness—not rightness"). Although this court will not substitute its judgment for that of the Board, *NLRB v. Paschall Truck Lines,* 469 F.2d at 76, this court will not be bound by the Board's conclusions when the Board's determinations go beyond what good sense permits.[8] *See NLRB v. Universal Packaging*

---

coerce membership in the Union in violation of 29 U.S.C.A. Sec. 158(b)(1) and (2). The Board may make this inferential finding of motive and intent by applying the long-enduring legal maximum that a party is presumed to intend the natural, foreseeable consequences of its acts.
*NLRB v. Local 542, 542–A & 542–B, Int'l Union of Operating Engr's,* 485 F.2d 387, 392, (3rd Cir.1973) (citations omitted). *See NLRb v. Moving Picture & Projection Mach. Operators Union, Local 123,* 649 F.2d 610, 612 (8th Cir. 1981).
In order to find that the administration of the hiring hall in this case is an unfair labor practice, the Board must also make a finding that the Local operated an exclusive hiring hall.

*See Plumbers Local Union No. 17 v. NLRB,* 575 F.2d 585, 586 (6th Cir.1978). In this case, the Local does not dispute that it operated an exclusive hiring hall.

8. The Supreme Court has explained that the circuit should accept the board's credibility determinations unless the credited evidence ... carries its own death wound, that is, is incredible and therefore, cannot in law be credited, and the discredited evidence ... carries its own irrefutable truth, that is, is of such nature that it cannot in law be discredited. *NLRB v. Pittsburgh Steamship Co.,* 337 U.S. 656, 660, 69 S.Ct. 1283, 1285, 93 L.Ed. 1602 (1949), *quoting NLRB v. Robbins Tire & Rubber Co.,* 161 F.2d 798, 800 (5th Cir.1947). The Supreme Court has explained, however, that it does "not re-

*Corp.,* 361 F.2d 384, 388 (1st Cir.1966) ("questions of credibility are for the Board, subject to judicial review only when it oversteps the bounds of reason"); *NLRB v. Mt. Vernon Telephone Co.,* 352 F.2d 977, 979 (6th Cir.1965).

■ This standard of review for the Board's credibility determinations is consistent with the purposes and design of the National Labor Relations Act. A reviewing court should be reluctant to set aside the Administrative Law Judge's credibility determinations because he has the opportunity to observe the demeanor of the witnesses.[9] The Administrative Law Judge "sees the witnesses and hears them testify while . . . the reviewing court looks only at cold records."[10] Furthermore, this standard permits this court to provide proper review of the Board's decisions. We must determine whether substantial evidence supports the Board's findings. *Universal Camera Co. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951). In order to make such a determination, we must examine the entire record and evaluate the Board's decision,

"taking into account whatever in the record fairly detracts from its weight." *Id.* at 488, 71 S.Ct. at 464. Our review for substantial evidence requires this court to accept the Board's credibility determinations unless they are unreasonable. *See NLRB v. Com General Corp.,* 684 F.2d 367, 369–70 (6th Cir.1982).

■ A careful examination of the record indicates that the Board's decision to credit the testimony of Moore and Rawson was proper. The Local argues that the Board's credibility determinations were irrational because the Local referred electricians from *both* Group I and Group II to the same contractors and, thus, did not discriminate. The Local's argument that Mullaly could not have refused to refer Moore and Rawson to Universal or Petras because no such jobs were available on May 31, has no evidentiary support. The referral list indicates that the Local made its first referrals for Universal or Petras on Tuesday, May 29. If Mullaly had not refused to allow Moore or Rawson to sign the list on May 24, one

quire that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve." *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 496, 71 S.Ct. 456, 468, 95 L.Ed. 456 (1957).

The circuit courts have articulated the standard for review of the Board's credibility determinations in various fashions. *Compare NLRB v. Anthony Co.,* 557 F.2d 692, 695 (9th Cir. 1977) (the court will accept the Board's credibility determinations "unless found to be inherently incredible or patently unreasonable") *and NLRB v. Huntington Hospital, Inc.,* 550 F.2d 921, 924 (4th Cir.1977) (the Board's credibility determinations should be rejected only "where material uncontradicted evidence has been ignored . . . or where the evidence has been disregarded or eliminated") *with NLRB v. Columbia University,* 541 F.2d 922, 928 (2nd Cir.1976) (The Board's credibility determination should not be set aside "unless on its face it is hopelessly incredible or flatly contradicts either a so-called 'law of nature' or undisputed documentary evidence") *and NLRB v. Valmar Indus., Inc.,* 533 F.2d 1075, 1076 (8th Cir.1976) (the court should not disturb the Board's credibility determination unless it is "shocking to our conscience").

9. This court is not obligated to accept the administrative law judge's credibility determination in all instances. For example, where "the uncorroborated testimony of an untrustworthy

and interested witness, who stands to profit from a back pay award, may be held under such facts and circumstances not to constitute substantial evidence on the record." *NLRB v. Barberton Plastics Products, Inc.,* 354 F.2d 66, 69 (6th Cir.1965). *See NLRB v. Container Corp. of America,* 649 F.2d 1213, 1216 (6th Cir.1981); *Delco Air Conditioning Div. General Motors Corp. v. NLRB,* 649 F.2d 390, 393 (6th Cir.1981); *NLRB v. Elias Bros. Big Boy, Inc.,* 327 F.2d 421, 425 (6th Cir.1964); *NLRB v. Pyne Molding Corp.,* 226 F.2d 818, 819 (2nd Cir. 1955).

10. *NLRB v. Walton Mfg. Co.,* 369 U.S. 404, 408, 82 S.Ct. 853, 855, 7 L.Ed.2d 829 (1962) (per curiam). The administrative law judge is in the best position to assess the credibility of testimony because the demeanor of a witness

may satisfy the tribunal, not only that the witness' testimony is not true, but that the truth is the opposite of his story; for the denial of one, who has a motive to deny, may be uttered with such hesitation, discomfort, arrogance or defiance, as to give assurance that he is fabricating and that, if he is, there is no alternative but to assume the truth of what he denies.

369 U.S. at 408, 82 S.Ct. at 855, *quoting Dyer v. MacDougall,* 201 F.2d 265, 269 (2nd Cir.1952).

would have received the referral that went to another electrician who had signed on May 25.[11] The Local argues that because six of the nine jobs available June 4 at Universal and Petras went to travelers, it did not discriminate. An examination of the lists shows, however, that the Local had to refer six travelers because only three members were on the first list and present at the hiring hall as required by the collective bargaining agreement. The Local contends that the referrals of Moore and Rawson to Hammer and Smith and Weinstein indicates that it did not discriminate. Hammer and Smith and Weinstein, however, did not offer as much overtime as Universal and Petras provided. The Local's argument that it had no motive to discriminate against only Moore and Rawson is without merit because the referral list clearly shows that the Local referred members to jobs with overtime before it sent travelers, even though the latter had signed earlier. The lists indicate that the Local generally referred travelers to jobs with little opportunity for overtime.[12] Finally, the Local argues that significant inconsistencies between Moore's affidavit and his testimony before the Administrative Law Judge were evident. We are unable to discern such substantial inconsistencies that Moore's testimony would become incredible. While this affidavit stated that he returned to the hall on June 9, he testified that Mullaly actually refused to allow them to sign the list during the telephone conversation with Rawson and that they signed the list on June 11 while only Hillis was paying attention.

After a careful examination of the record, we conclude that substantial evidence supports the Board's findings that the Local discriminated against non-members. We believe that the Board made proper credibility determinations in reaching its conclusions. Accordingly, we grant enforcement of the Board's order.

NATHANIEL R. JONES, Circuit Judge, concurring.

I write separately to make clear the distinction between the standards of review for matters of credibility and for factual findings that may or may not rest upon credibility determinations. The majority opinion does not make clear that important distinction.

There are different standards for review of factual findings or conclusions and determinations concerning the credibility of witnesses. Review of factual findings is for **reasonableness.** *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 496, 71 S.Ct. 456, 468, 95 L.Ed. 456 (1951) ("examiner's *findings* (should not) be given more weight than, in reason and in light of judicial experience, they deserve") (emphasis added). Credibility determinations are accepted unless there is **no rational basis** for them. *NLRB v. Pittsburgh Steamship Company,* 337 U.S. 656, 660, 69 S.Ct. 1283, 1285, 93 L.Ed. 1602 (1949) (credibility determination should be accepted unless the credited evidence carries its own death wound, that is incredible and therefore, cannot in law be credited, and that the discredited evidence carries its own irrefutable truth, that is, is of such a nature that it cannot in law be discredited).

The majority correctly notes that credibility determinations of the ALJ must be afforded considerable weight upon review, and that the court should ignore them only when the Board "oversteps the bounds of reason." *NLRB v. Mt. Vernon Telephone Co.,* 352 F.2d 977, 979 (6th Cir.1965). In essence, the test is whether the credibility

---

**11.** The Local questions why Moore and Rawson waited until June to ride the list when they stated that they knew of the jobs when they first applied in May. Moore, however, corrected his testimony, asserting that he first learned of the overtime available at Universal and Petras on May 31, after he had been referred to Hammer and Smith. Rawson corroborated the corrected testimony.

**12.** The out of work lists show that Mullaly was not truthful when he told Rawson on Friday, June 8 that no calls had come in from Universal or Petras: on the next work day, Mullaly referred six members to Universal or Petras.

determination has no rational basis. *Compare NLRB v. Anthony Co.*, 557 F.2d 692 (9th Cir.1977) (determinations to be rejected only when patently unreasonable or inherently incredible), *with NLRB v. Columbia University*, 541 F.2d 922 (2d Cir.1976) (determinations should stand unless "hopelessly incredible").

Several times in the opinion, however, the majority confuses the **reasonableness** standard applied in reviewing *factual conclusions* with the **no rational basis** credibility standard.[1] The cases cited for the **reasonableness** standard make clear that they apply only to *inferences* the Board or the ALJ may draw *from the evidence, and not* to credibility determinations. *NLRB v. Paschall Truck Lines, Inc.*, 469 F.2d 74 (6th Cir.1972); *NLRB v. G. & S. Metal Products Company, Inc.*, 489 F.2d 441 (6th Cir.1973); *NLRB v. Com General Corp.*, 684 F.2d 367 (6th Cir.1982). The quotations in the majority opinion from these cases are taken wholly out of context;[2] in none of these cases is there an issue concerning the credibility determinations of the ALJ.

In *NLRB v. Paschall Truck Lines, supra,* the court noted that the "only issue presented in this case is a factual one; whether the alleged violation is supported by substantial evidence on the record as a whole." 469 F.2d at 74. After noting that "the possibility of drawing two inconsistent conclusions from the evidence does not prevent the administrative agency's findings from being supported by substantial evidence," *id.* at 75, the quotation cited by the majority appears:

Reviewing the credibility findings and the inferences drawn by the Board from the evidence, the test is whether the

Board's conclusions are reasonable in light of the proven facts.

It is unfortunate that the court used the phrase "credibility findings" in its statement of the standard of review. That phrase is ambiguous between "credibility determinations" and "conclusions based upon credibility determinations." The latter is reviewed for reasonableness, the former is not. The sentences that follow the passage make clear that the case is concerned only with the reasonableness of the *factual inferences* reached from the evidence in the case:

Thus, this court may not substitute its judgment on the question whether the *inference drawn* is a correct one or whether a *different inference* would be better supported, but is limited to the determination of reasonableness—not rightness.

*Id.* at page 75 (emphasis added). There is no discussion of the credibility determinations of the ALJ. A review of the other cases cited shows that this Court has not applied a reasonableness standard to review credibility determinations.

*NLRB v. G. & S. Metal Products Company,* 489 F.2d 441 (6th Cir.1973) does not support a reasonableness standard for credibility determinations. In that case, there was no issue of credibility before the court. Rather, the issue was whether there was substantial evidence to support the conclusion that the employees were fired because of their union activities. The quotation cited by the majority, when it appears in context, clearly is intended only to apply the **reasonableness** standard to review the *inferences* drawn from the evidence in the case, and not to credibility determinations:

---

1. On page 117, the majority states, "We will set aside the Board's determination of credibility only where its resolution is unreasonable." The two cases cited for that proposition involve review of *factual conclusions* or *findings* and not *credibility determinations* underlying those findings.

On Page 118, the majority notes, "Our review for substantial evidence requires this court to accept the Board's credibility determinations unless they are unreasonable." Again, this confuses the "reasonableness" review for

substantial evidence supporting the factual findings and conclusions, with the "no rational basis" review of credibility determinations.

2. The majority cites all three cases for the proposition, which appears in each, that:

Reviewing credibility findings and inferences drawn by the Board from the evidence, the test is whether the Board's conclusions are reasonable in light of the proven facts.

At 117. This phrasing originated in *Paschall Truck Lines.*

The issues raised by the Company are factual. As we recently stated, "in reviewing the credibility findings and the inferences drawn by the Board from the evidence, the test for a reviewing court is whether the conclusions are reasonable in light of the proven facts." *N.L.R.B. v. Paschall Truck Lines, Inc.*, 469 F.2d 74, 76 (6th Cir.1972). In the case before us the Administrative Law Judge received evidence that would indicate illegal employer interference with union organizational activities. The discharging of numerous employees, some with good work records, within a short time after they became involved in union activities raised at least a reasonable inference that they were fired because of their union activities. The Board is permitted to infer unlawful intent from the circumstances surrounding such discharges.

489 F.2d at 443.

This Court was also not faced with an issue concerning credibility determinations in *NLRB v. ComGeneral Corp.*, 684 F.2d 367 (6th Cir.1982). There the Court was evaluating the employer's intent in light of evidence supporting a mixed-motive of the employer for a discharge. Thus, the Court was reviewing the *factual conclusions* based upon the evidence in the record and not the credibility determinations of the ALJ.

Finally, to say that *NLRB v. Universal Packaging Corporation*, 361 F.2d 384 (1st Cir.1961) supports a **reasonableness** standard of review for credibility determinations and thus that "this court will not be bound by the Board's conclusions when the determinations go beyond what good sense permits" (at 117), is to misinterpret the statement that questions of credibility will be overturned only when they "overstep the bounds of reason." *Id.* at 388. That phrase suggests the **no rational basis** standard of review.

In essence, the line of Sixth Circuit cases cited by the majority does not support a **reasonableness** standard of review for credibility determinations. Rather, the cases stand for the proposition that the review of *factual findings* based upon credi-

bility determinations and other evidence will be for reasonableness.

Since I believe that the appropriate standard for review of credibility determinations dictates that we cannot upset the determinations unless there is no rational basis for them, that the determinations in this case do have a rational basis and that there is substantial evidence in the record as a whole to support the ultimate holding in this case, I concur.